70 So.3d 1148 (2011)
Freda HOWELL d/b/a Lickity Splitz, Appellant
v.
BOARD OF SUPERVISORS OF JEFFERSON DAVIS COUNTY, Mississippi, Appellee.
No. 2010-CA-00717-COA.
Court of Appeals of Mississippi.
August 16, 2011.
*1151 Victor A. Dubose, Orvis A. Shiyou Jr., Hattiesburg, attorneys for appellant.
Robert E. Sanders, Jackson, attorney for appellee.
EN BANC.
MAXWELL, J., for the Court:
¶ 1. In 2009, the Jefferson Davis County (County) Board of Supervisors (Board) selected Freda Howell, doing business as Lickity Splitz, as the "primary" bidder on a contract to provide catered meals to the County's prisoners. But after a dissatisfactory visit by the sheriff and several Board members to Lickity Splitz's facility, Howell received a letter by the Board's attorney notifying Howell that the County would be using the services of another bidder. At its next meeting, the Board voted to use the "alternate" bidder. The Board did not notify Howell of this meeting or provide her an opportunity to address the Board's concerns.
¶ 2. As the primary bidder, Howell had a vested property interest entitled to due-process protection. We find the Boardand the circuit court in affirming the Board's decision to use the alternate biddererroneously relied on provisions in Mississippi Code Annotated section 31-7-13 (Rev.2010) to justify depriving Howell of this interest without notice and a hearing. Therefore, we reverse the judgment of the circuit court and remand this case for proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY
¶ 3. Mississippi statute allows boards of supervisors to choose one of three methods for feeding county prisoners: (1) contract with a local caterer through the bid process in Mississippi Code Annotated section 31-7-13, (2) direct the sheriff to purchase all necessary food and supplies, or (3) contract with the local public hospital. Miss. Code Ann. § 19-25-73(1) (Rev.2003). The Board chose the first methodcontracting with a caterer.
¶ 4. In December 2008, the Board requested bids to provide prisoner meals during 2009. Howell timely submitted a bid, as did Bassfield Texaco and two other bidders. At its January 5, 2009 meeting, the Board chose Howell as the "primary" bid and Bassfield Texaco as the "alternate" bid.
¶ 5. After the January 5 meeting, the sheriff and several Board members visited Lickity Splitz. On the location were two separate buildings the sheriff described as "snowball stands." Inside the buildings, *1152 they discovered there was no food, cooking utensils, pots, pans, or commercial cooking equipment. Instead, it appeared Howell had transported cooked food from an undisclosed location using her personal vehicle, which also contained her personal effects. On January 9, 2009, the Board's attorney mailed Howell a letter notifying her that the Board "had decided" to use the alternate bidder because of the unsatisfactory inspection. The Board met on January 20, 2009. The sheriff gave an oral report that he did not believe Lickity Splitz's food-preparation procedures were sanitary or that its facility met the requirements for a commercial food establishment. The Board members who participated in the site inspection stated they did not believe that Lickity Splitz had the ability to fulfill the contract for prisoner meals. They also maintained they would be fearful of feeding prisoners any food that had passed through Lickity Splitz's facilities. Based on these reports, the Board decided to use Bassfield Texaco's services instead of Howell's.
¶ 6. Also on January 20, 2009, Howell filed a notice of appeal in the circuit court. The notice of appeal stated Howell was appealing the Board's decision to use the alternate bidder, of which she had received notification on January 12, 2009.
¶ 7. The circuit court found the Board's January 5 and 20, 2009 minutes were not sufficient. On December 29, 2009, it issued a remand order, instructing the Board to amend its January 2009 minutes. Specifically, the circuit court ordered the Board to amend (1) its January 5 minutes to include the dollar amount of Lickity Splitz's and Bassfield Texaco's bids and (2) its January 20 minutes to include either a report or affidavits by the sheriff and Board members who inspected Lickity Splitz's facility. On January 19, 2010, the Board met and amended its January 5 and 20, 2009 minutes to include the information requested in the circuit court's order.
¶ 8. On February 8, 2010, Howell filed a second notice of appeal. The notice stated Howell was appealing both (1) the Board's decision to rescind its award of the bid to Howell and (2) the Board's amendments of its January 5 and January 20, 2009 minutes. Howell acknowledged her notice was more than ten days after the January 19, 2010 meeting but claimed her appeal was timely because "it is the Appellant's information that this decision [to amend the minutes] has not yet been entered on a book and page of the Board's minutes."
¶ 9. The circuit court accepted Howell's second notice of appeal as timely. Due to "logistical difficulty" in assigning the January 19, 2010 minutes a book and page number, the circuit court stated it would "ignore" the "procedural issue" of Howell's failure to comply with the ten-day requirement under Mississippi Code Annotated section 11-51-75 (Rev.2002).
¶ 10. On April 5, 2010, the circuit court issued a final ruling. It affirmed both (1) the Board's January 20, 2009 decision to the use the alternate bidder under Mississippi Code Annotated section 31-7-13(f) and (2) its January 19, 2010 amendments of the January 2010 minutes.
¶ 11. Howell further timely appealed to this court.

DISCUSSION
¶ 12. Howell argues the Board's actions were illegal for several reasons. Although we address her arguments below, our two main concerns are (1) the timing of the two notices of appeal and (2) the Board's failure to notify Howell of the January 20, 2009 meeting where it decided to use the alternate bidder.

*1153 I. The Notices of Appeal
¶ 13. Mississippi Code Annotated section 11-51-75 provides, in part, that: "Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision[.]" Non-compliance with section 11-51-75 is not a "procedural issue" that may be ignored. Instead, compliance is "mandatory and jurisdictional." E.g., Newell v. Jones County, 731 So.2d 580, 582 (¶ 10) (Miss.1999).

A. The First Notice
¶ 14. Howell filed her first notice of appeal on January 20, 2009, the same day the Board decided to use Bassfield Texaco's services instead of Howell's. But her notice stated she "was notified of such decision by letter of the Board's Attorney dated January 9, 2009, which was received by [her] on January 12, 2009."
¶ 15. A board of supervisors "can act only as a body, and its act must be evidenced by an entry on its minutes." Thompson v. Jones County Cmty. Hosp., 352 So.2d 795, 796 (Miss.1977); Lee County v. James, 178 Miss. 554, 559, 174 So. 76, 77 (1937) (holding "boards of supervisors can bind counties, or districts therein, only when acting within their authority and in the mode and manner by which this authority is to be exercised under the statutes"). Because, under Thompson, the January 9 letter was neither a Board decision nor evidence of a Board decision, Howell could not appeal from the letter under section 11-51-75. Sanford v. Bd. of Supervisors, Covington County, 421 So.2d 488, 490 (Miss.1982) ("[U]ntil such time as the Board has issued a final order . . . there can be no appealable final judgment."). Instead, the first appealable act of the Board was made during its January 20, 2009 meeting, as evidenced by the minutes from that meeting. Thompson, 352 So.2d at 796.
¶ 16. If all the Board had done was send the letter without taking any real actionor had made a different decision at its January 20, 2009 meeting than the letter indicated it wouldHowell's notice would not be compliant with section 11-51-75. But we cannot overlook the fact the Board took the very action indicated by the letter. We find this particular circumstance analogous to a trial court announcing how it intends to rule but not entering a final judgment until after a party files a notice of appeal. Our appellate rules provide: "A notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day of the entry." M.R.A.P. 4(b). Therefore, despite indications Howell filed her notice of appeal before the Board acted, we find the trial court properly viewed her notice of appeal as being filed after, and in response, the Board's January 20, 2009 action. See City of Biloxi v. Hilbert, 597 So.2d 1276, 1279 (Miss. 1992) (applying the Mississippi Rules of Appellate Procedure to determine the scope of the circuit court's appellate jurisdiction under section 11-51-75).

B. The Second Notice of Appeal
¶ 17. The circuit court ignored the fact Howell filed her second notice twenty days after the Board's January 19, 2010 meeting because the Board's minutes had not yet been assigned a book and page number. But in previous cases this court has made clear this circumstance in not relevant to whether Howell's second notice was timely. See Rankin Group, Inc. v. City of Richland, 8 So.3d 259, 260-61 (¶¶ 6-12) (Miss.Ct.App.2009) (expressly *1154 rejecting the argument that the ten-day period does not begin to run until the minutes from a board meeting are signed); Tilghman v. City of Louisville, 874 So.2d 1025, 1026 (¶¶ 4-5) (Miss.Ct.App.2004) (similarly rejecting the argument the ten-day period did not begin to run until the party adversely affected by the City's decision received a written copy of Board's findings). The ten-day period for appeal begins to run when a board adjourns the meeting during which the decision being appealed is made. Rankin Group, 8 So.3d at 261(12); Tilghman, 874 So.2d at 1026 (¶¶ 4-5).
¶ 18. Howell did not file her second notice of appeal within ten days of the Board's January 19, 2010 meeting in which the Board amended its minutes. But Howell's appeal does not depend on this untimely second notice because the circuit court retained jurisdiction pending compliance with its remand order. "A circuit court, sitting as an appellate court, enjoys the same authority [as the Mississippi Supreme Court or Court of Appeals] to remand a case to an inferior body for record supplementation or a factual determination while at the same time retaining jurisdiction over both the parties as well as the subject matter." Hilbert, 597 So.2d at 1279 (referring to the authority granted in M.R.A.P. 14(b)). As in Hilbert, the circuit court's December 2009 remand order was not a final judgment to affirm or reverse the Board's decision. Id. Instead, it ordered the Board to include further findings in its minutes because the record before the circuit court was inadequate. Therefore, the circuit court retained jurisdiction through the entrance of its final judgment in April 2010. Id.
¶ 19. Thus, we are satisfied the circuit court had appellate jurisdiction over the Board's January 20, 2009 and January 19, 2010 actions.

II. The Board's Decision to Use the Alternate Bidder

A. Standard of Review
¶ 20. Appellate review of a county board's decision is limited. Preferred Transp. Co., LLC v. Claiborne County Bd. of Supervisors, 32 So.3d 549, 551 (¶ 5) (Miss.Ct.App.2010) (citing Billy E. Burnett, Inc. v. Pontotoc County Bd. of Supervisors, 940 So.2d 241, 242-43 (¶ 5) (Miss. Ct.App.2006)). A decision or order of a county board of supervisors will be upheld unless the order was not supported by substantial evidence, was arbitrary or capricious, was beyond the board's scope or power, or was in violation of the aggrieved party's constitutional or statutory rights. Robinson v. Lincoln County Bd. of Supervisors, 973 So.2d 288, 289-90 (¶ 6) (Miss. Ct.App.2008) (citing Ladner v. Harrison County Bd. of Supervisors, 793 So.2d 637, 638 (¶ 6) (Miss.2001)).

B. No Illegal Action Prior to January 20, 2009
¶ 21. Howell strongly insists the Board's decision to use the alternate bidder is void because it was illegally made outside a properly convened meeting. She claims the Board acted sometime between its January 5, 2009 decision awarding her the contract and the January 9, 2009 letter. She relies on the letter's language that the Board "has decided" to use the alternate bidder.
¶ 22. We find the letter is not evidence of an illegal action by the Board. Thompson, 352 So.2d at 796 (holding a board of supervisors "can only act as a body, and its act must be evidenced by an entry on its minutes"). "[T]he decisions to be executed or the contracts to be awarded by the board must be determined or decided upon only in or at a lawfully convened *1155 session, and the proceedings must be entered upon the minutes, of the board or commission." James, 178 Miss. at 558, 174 So. at 77. Therefore, the Board could not make a decision regarding Howell's contract outside of a properly convened meeting. We would view Howell's argument differently had the Board merely requested its attorney send a letter before it began using Bassfield Texaco's services. But the Board followed through and actually "acted" in a properly convened meeting on January 20, 2009. And it is this action, not some alleged void action, we now consider.[1]

C. No Improper Amendment of the Board's Minutes
¶ 23. We also find the Board properly amended its January 5 and 20, 2009 minutes, in compliance with the circuit court's order.
¶ 24. In Huey Stockstill, Inc. v. Hales, 730 So.2d 539, 541 (¶ 7) (Miss.1999), a board of supervisors rejected the lowest bidder due to ethical considerations. Two months later, it amended its minutes to provide a more detailed explanation of what happened at the meeting where the lowest bidder was rejected. Id. at 543 (¶ 19). The Mississippi Supreme Court affirmed, holding "that a governing body may, at a subsequent meeting, amend the minutes of the prior meeting to reflect what actually occurred on the first occasion." Id. at 544 (¶ 20); see also Sunland Publ'g Co. v. City of Jackson, 710 So.2d 879, 881 (¶ 6) (Miss.1998) (recognizing that a trial court sitting in an appellate capacity may remand a decision of a governmental body to that body for more detailed findings where the record does not adequately support the governmental decision).
¶ 25. As in Sunland, the circuit court remanded the issue of the Board's January 5 and 20, 2009 decisions to incorporate more detailed findings into the record. And, as in Huey, the Board complied by providing a more accurate and detailed explanation of its decisions without inserting new reasons why it selected and then rejected Howell. We find this to be a proper exercise of the Board's authority. Huey, 730 So.2d at 543-44 (¶¶ 20-21).

D. No Notice and Opportunity to be Heard
¶ 26. Although we do not find the Board acted illegally prior to its January 20, 2009 meeting or improperly amended the minutes from that meeting, we do find the Board should have provided Howell notice of the meeting and an opportunity to address the sheriff's and Board's concerns over Lickity Splitz's services.
¶ 27. In designating Howell as the primary bidder, the Board conferred on Howell a vested property interest entitled to the constitutional protection of due process. See Nelson v. City of Horn Lake, 968 So.2d 938, 944 (¶ 22) (Miss.2007) (relying on Shepard v. City of Batesville, 2007 WL 108288, at *8 (N.D.Miss. January 8, 2007), which found the actual award of a *1156 contract under section 31-7-13 "gave the plaintiff a protected property interest").
¶ 28. This is not a case where Howell, indisputably the lower bidder, was not selected as the "lowest and best bidder" under Mississippi Code Annotated section 31-7-13(d)(i). Cf. Nelson, 968 So.2d at 944 (¶ 23); see also Billy E. Burnett, Inc., 940 So.2d at 245 (¶ 13) (finding the board did not act arbitrarily and capriciously when it rejected lowest bidder). If it were, then the circuit court would have been correct that all Howell was entitled to was section 31-7-13(d)(i)'s requirement that the Board's minutes provide "detailed calculations and narrative summary showing that the accepted bid was determined to be the lowest and best bid[.]" Nelson, 968 So.2d at 945 (¶ 27) (quoting Miss.Code Ann. § 31-7-13(d)(i)). Instead, because the Board actually awarded Howell the contract, she was entitled to notice and a hearing before her interest in the prisoner-meals contract was deprived. Shepard, 2007 WL 108288, at *9; cf. Harris v. Miss. Valley State Univ., 873 So.2d 970, 985 (¶ 40) (Miss.2004) (holding interest in public employment contract entitled terminated state employee to notice and adequate opportunity to be heard at some kind of hearing); Univ. of Miss. Med. Ctr. v. Hughes, 765 So.2d 528, 540 (¶ 41) (Miss. 2000) (citing Goss v. Lopez, 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)) (holding that the "disciplinary dismissal [of a public-university student] requires that the student be given oral or written notice of the charges and evidence against him and the opportunity to present his side of the story").
¶ 29. This is also not a case where section 13-7-13(f) permitted the Board to use the alternate bidder merely upon showing Howell could not provide the catered meals. Section 13-7-13(f) states:
When necessary to ensure ready availability of commodities for public works and the timely completion of public projects, no more than two (2) alternate bids may be accepted by a governing authority for commodities. No purchases may be made through use of such alternate bids procedure unless the lowest and best bidder cannot deliver the commodities contained in his bid. In that event, purchases of such commodities may be made from one (1) of the bidders whose bid was accepted as an alternate.
Miss.Code Ann. § 31-7-13(f) (emphasis added). Based on a plain reading of the statute, this alternative-bid provision does not apply to all commodities but only "commodities for public works." "Public works" is defined as "[s]tructures (such as roads or dams) built by the government for public use and paid for by public funds." Black's Law Dictionary 1639 (8th ed. 2004). Because Howell was not providing "commodities for a public works," we find this was not the type of contract subject to the alternative-bid provision. Cf. Shepard, 2007 WL 108288, at *1, 3-4 (applying section 31-7-13(f) to a contract with a construction company for the supply of commodities used in the construction of public works).
¶ 30. Our holding is limited to finding the circuit erred in applying 31-7-13(f) to affirm the Board's termination of Howell's contract without notice and a hearing. We pass no judgment on the substance of the Board's decision to stop using Howell's contracted services, acknowledging the Board may have had other legal reasons for not buying food from Howell.
¶ 31. Because the Board violated Howell's constitutional right to due process, we must reverse the circuit court's judgment, which affirmed the Board's decision to end the contract with Howell. Robinson, 973 *1157 So.2d at 289-90 (¶ 6). We remand this matter to the circuit court to provide Howell with proceedings that afford her procedural due processnamely, the opportunity to defend against the Board's claims that it justifiably stopped using her meal serviceas well as comply with section 31-7-13.
¶ 32. Although Howell asked this court to reverse and renderand award her contract damages and consequential costs and feeswe find any award of damages inappropriate at this stage. Based on the determination by the sheriff and Board members who visited Lickity Splitz's facilities that Howell's business was unsanitary and unsuitable for commercial food preparation, we cannot say, had the Board provided Howell with a hearing, it would have been unjustified in ending the contract. Therefore, any award for contract damages would be premature. And to recover more than nominal damages for a procedural due-process violation, Howell "must show that [her] injuries resulted from the denial of due process itself" (i.e., from not being allowed to appear before the Board) and not merely from the underlying decision of the Board. Hill v. City of Pontotoc, Miss., 993 F.2d 422, 425 (5th Cir.1993) (citing Carey v. Piphus, 435 U.S. 247, 263, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). On remand, Howell may present evidence of both her alleged contract damages and any actual damages resulting from the procedural due-process violation.
¶ 33. THE JUDGMENT OF THE JEFFERSON DAVIS COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., MYERS, BARNES AND ISHEE, JJ., CONCUR. RUSSELL, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, P.J., AND ROBERTS, J., AND JOINED IN PART BY RUSSELL, J. CARLTON, J., NOT PARTICIPATING.
IRVING, P.J., dissenting:
¶ 34. The majority finds that the Board of Supervisors of Jefferson Davis County (Board) violated Freda Howell's due process rights when it unilaterally, without notice to her, abrogated her contract to provide meals to the prisoners of the county and awarded the contract to an alternate bidder. I agree. The majority then reverses the judgment of the circuit court, which had affirmed the Board's actions, and remands the case to the circuit court "to provide Howell with proceedings that afford her procedural due processnamely, the opportunity to defend against the Board's claims that it justifiably stopped using her meal serviceas well as comply with section 31-7-13." Majority opinion at (¶ 31). I disagree with the remedy mandated by the majority. Therefore, I dissent. I believe that the judgment of the circuit court should be reversed and rendered and the case remanded for a determination of damages and costs pursuant to the law of contracts and Mississippi Code Annotated section 11-51-75 (Rev.2002).
¶ 35. On January 5, 2009, the Board accepted a bid from Howell, doing business as Lickity Splitz, to be the primary provider of catered meals to county prisoners at the rate of $11 per prisoner, per day. Four days later, the Board's attorney sent a letter to Howell advising her that the Board had decided to use the services of Bassfield Texaco, which had also submitted a bid and had been accepted by the *1158 Board as the alternate provider of meals for the county's prisoners. Bassfield Texaco's bid was for $13.10 per prisoner, per day. Apparently, the Board had not, in an official meeting, authorized the Board's attorney to send the letter, and the record does not provide any explanation as to the basis for the attorney's authority to send it.[2] Nevertheless, in an official meeting of the Board on January 20, 2009, the Board ratified the actions of its attorney in sending the letter. Also, on the same date, the Board entered an order, finding as follows:
Whereas, based on the negative report received from Sheriff McCullum and the representatives of the Board regarding the conditions of said facilities, the Board has found that Lickity Splitz cannot deliver the commodities contained in their bid.
IT IS THEREFORE HEREBY ORDERED AND RATIFIED that the alternate bidder, Bassfield Texaco[,] shall provide prisoner meals for the County for the year 2009 or until further order of the Board.
¶ 36. In the meantime, unaware of the Board's action on January 20, Howell, acting pursuant to the letter that she had received from the Board's attorney, appealed to the circuit court, which did not render a decision until December 29, 2009. In its December order, the circuit court remanded the matter to the Board with instructions to the Board to amend, nunc pro tunc, its January 20, 2009 minutes to reflect the amounts of Howell's and Bassfield Texaco's bids and the report of Sheriff McCullum and the representatives of the Board who had inspected Howell's facilities.
¶ 37. On January 19, 2010, the Board complied with the order of the circuit court by issuing two orders nunc pro tunc: one amending its January 5, 2009 minutes to reflect the bid amounts of Howell and Bassfield Texaco and one amending its January 20, 2009 minutes to reflect an affidavit from the Board's president detailing the findings of the group that visited Howell's business after accepting her bid on January 5, 2009.
¶ 38. On April 2, 2010, the circuit court found that the Board's decisionthat Howell could not deliver the commodities contained in her bidwas fairly debatable and that the circuit court could not substitute its judgment for that of the Board. Therefore, the circuit court, finding that the Board's decision was not arbitrary and capricious, affirmed the Board's decision to use the alternate bidder, Bassfield Texaco, to provide meals to the prisoners of Jefferson Davis County. From a review of the circuit court's December 29 order remanding the matter to the Board, it is clear that undergirding the court's decision to affirm the actions of the Board is the court's belief that the Board's action is justified under Mississippi Code Annotated section 31-7-13(f) (Rev.2010), which states:
When necessary to ensure ready availability of commodities for public works and the timely completion of public projects, no more than two (2) alternate bids may be accepted by a governing authority for commodities. No purchases may be made through [the] use of such alternate[-]bids procedure unless the lowest and best bidder cannot deliver the commodities contained in his bid. *1159 In that event, purchases of such commodities may be made from one (1) of the bidders whose bid was accepted as an alternate.
¶ 39. I agree with the majority that the circuit court erred in relying upon section 31-7-13(f) as justification for the Board's unilateral abandonment of its contract with Howell after it had accepted her bid. Providing meals to prisoners does not involve "commodities for public works." Despite holding that the circuit court erred in relying upon section 31-7-13(f) to affirm the Board's actions, the majority mysteriously states, without citation of authority: "[W]e cannot say, had the Board provided Howell with a hearing, it would have been unjustified in ending the contract. Therefore, any award for contract damages would be premature." Majority opinion at (¶ 32).
¶ 40. It should be noted that there is no evidence in the record that Howell breached her contract to provide the meals. Rather, the evidence is that she was never given a chance to provide the meals. I know of no authority that would allow the Board, as it did here, to change its mind and unilaterally abandon its obligation to honor the resulting contract with Howell when it accepted her bid. She was entitled not to a hearing to prove that she could perform the contract, but to the opportunity to perform. Had she been unable to perform, then she would have been in breach of contract, and in that event, the Board would have been justified in obtaining performance from another, with Howell being responsible for any damages the Board may have suffered because of her breach.[3] Therefore, I agree with Howell that she is entitled to damages occasioned by the Board's breach of their contract.
¶ 41. Pursuant to section 11-51-75, the circuit court, in its initial order, should have ordered the Board to honor its contractual obligations with Howell rather than remand the case to the Board for amendment of the Board's minutes. Since specific performance is not now possible, Howell is entitled to an award of compensatory damages under the law of contracts. City of Durant v. Laws Constr. Co., 721 So.2d 598, 606 (¶ 34) (Miss.1998). I would reverse and render the judgment of the circuit court and remand this case to the circuit court for a determination of damages and costs in accordance with the requirements of section 11-51-75 and City of Durant. For the reasons presented, I dissent.
GRIFFIS, P.J., AND ROBERTS, J., JOIN THIS OPINION. RUSSELL, J., JOINS THIS OPINION IN PART.
NOTES
[1] We also reject Howell's argument the sheriff and members of the Board had no right to perform a site visit of Lickity Splitz's facility. As the jailer of the County, the sheriff has the duty to see that his prisoners are properly fed. Miss.Code Ann. § 19-25-71(1) (Rev.2003). See also Miss. Att'y Gen. Op. No. 93-0166, 1993 WL 669226, Dyson (March 17, 1993) ("It is the responsibility of the sheriff to provide wholesome and sufficient food and drink for prisoners that are in his custody."). And section 19-25-73(1) authorizes the Board's involvement in feeding the prisoners. Miss. Code Ann. § 19-25-73(1). Therefore, the inspection was a proper action taken by the sheriff and Board members to carry out this duty.
[2] At some point following the January 5 meeting, Sheriff Henry McCullum and two members of the Board inspected Howell's business and determined that it was not suitable for the preparation of the meals. Apparently, it was following this inspection when the Board unofficially decided to use the alternate bidder, thereby prompting the letter to Howell. However, the advertisement for bids issued by the Board did not make acceptance of the bids contingent upon an inspection of the premises of the successful bidder.
[3] The record reflects that at the time of Howell's bid, she was in her second, non-consecutive year of providing meals to the prisoners in Covington County, Mississippi, pursuant to a contract with that county. The record also reflects that she had a current food permit from the Mississippi State Department of Health to operate a facility at 102 Covington Plaza, Collins, Mississippi 39428. I should also note that the advertisement for bids issued by the Board contained no provision as to where the meals were to be prepared.