# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-SA-01755-COA

**FREDA HOWELL D/B/A LICKITY SPLITZ**                                    **APPELLANT**

**v.**

**BOARD OF SUPERVISORS OF JEFFERSON**                                    **APPELLEE**
**DAVIS COUNTY, MISSISSIPPI**

DATE OF JUDGMENT:              08/19/2013
TRIAL JUDGE:                   HON. ANTHONY ALAN MOZINGO
COURT FROM WHICH APPEALED:     JEFFERSON DAVIS COUNTY CIRCUIT
                               COURT
ATTORNEY FOR APPELLANT:        ORVIS A. SHIYOU JR.
ATTORNEY FOR APPELLEE:         ROBERT E. SANDERS
NATURE OF THE CASE:            CIVIL - CONTRACT
TRIAL COURT DISPOSITION:       AFFIRMED THE DECISION OF THE
                               JEFFERSON DAVIS COUNTY BOARD OF
                               SUPERVISORS
DISPOSITION:                   REVERSED AND REMANDED IN PART;
                               REVERSED AND RENDERED IN PART -
                               04/07/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   **BEFORE GRIFFIS, P.J., CARLTON  AND JAMES, JJ.**

   **CARLTON, J., FOR THE COURT:**

¶1.    Freda Howell, doing business as Lickety Splitz, appeals the order of the Jefferson

Davis County Circuit Court denying her appeal from the decision of the Jefferson Davis

County Board of Supervisors (the Board).  Upon review, we find error in the Board's

capricious rescission of Howell's contract herein for prisoner catering services since the

rescission was arbitrarily based upon consideration of matters outside of the bid

specifications.[1] *See Preferred Transp. Co. v. Claiborne Cnty. Bd. of Sup'rs*, 32 So. 3d 549, 554 (¶12) (Miss. Ct. App. 2010). Therefore, we reverse and render a finding that the Board lacked justification to rescind Howell's contract for prisoner meals, and we remand to the trial court to determine damages.

## FACTS

¶2. In December 2008, the Board requested sealed bids to provide prisoner meals during 2009. The bid request specified that the Board sought a local caterer or restaurant owner to bring in food for the prisoners of Covington County, Mississippi. Howell timely submitted a bid, as did Bassfield Texaco and two other bidders. At its January 5, 2009 meeting, the Board chose Howell as the "primary" bid, and Bassfield Texaco as the "alternate" bid. The catering services were to begin "immediately and [end] January 4, 2010." We acknowledge that when a contract fails to specify a particular date on which performance thereunder begins, then performance is presumed to begin within a reasonable time. *See Denbury Onshore v. Precision Welding Inc.*, 98 So. 3d 449, 453 (¶15) (Miss. 2012).

¶3. The Board awarded Howell, doing business as Lickety Splitz, the contract as the lowest and best bid. Jefferson Davis County Sheriff Henry McCullum and two other Board members performed inspections of Howell's facility in January 2009, prior to performance of the contract beginning. After the first of two inspections, Sheriff McCullum expressed his concerns to the Board, stating that he observed that Howell possessed no cooking utensils or other evidence of active on-site cooking at her meal-preparation facility in Collins. Sheriff

---

[1] Miss. Code Ann. § 31-7-105 (Rev. 2010). *See also* Miss. Code Ann. § 31-7-13(d)(i) (Supp. 2014); Miss. Code Ann. § 19-25-73 (Rev. 2012).

McCullum claimed to possess experience in food preparation before becoming sheriff, and he provided that he conducted a similar site inspection at another restaurant when he first became sheriff.

¶4. Sheriff McCullum testified that Howell informed him during the inspection that she prepared food at her house and then brought it to the facility to put in Styrofoam plates for delivery.[2] Sheriff McCullum also testified that he found the conditions at the facility too unsanitary for food preparation. He also stated that he did not believe that Howell's meal-preparation facility was sufficient to provide meals to Jefferson Davis County on a regular and reliable basis, in addition to the meals she was already furnishing to Covington County and the Town of Collins.

¶5. Four days after award of this contract, on January 9, 2009, the Board's attorney mailed Howell a letter informing her that the Board voted to rescind the contract it awarded her on January 5, 2009, due to an unsatisfactory inspection and awarded the contract to the alternate bidder. Then, at the January 20, 2009 Board meeting, Sheriff McCullum gave an oral report of his informal inspection, stating that he felt that Howell's food-preparation procedures were unsanitary or that her facility failed to meet the requirements for a commercial food establishment. The Board members who visited the facility and performed an inspection also stated their belief that Howell lacked the ability to fulfill the contract for prisoner meals. The Board members also expressed concern about serving food to prisoners that had passed

---

[2] However, Howell denied making such a statement to Sheriff McCullum when she was subsequently provided a due-process hearing after remand of the case in *Howell v. Board of Supervisors of Jefferson Davis County (Howell I)*, 70 So. 3d 1148, 1157 (¶32) (Miss. Ct. App. 2011).

through Howell's facilities. Without providing notice to Howell, the Board rescinded Howell's contract just awarded by them on January 5, 2009, to provide prisoner meals. The Board then awarded the contract to Bassfield Texaco, the alternate bidder.

¶6. On January 20, 2009, Howell filed a notice of appeal in the trial court, appealing the Board's decision to use the alternate bidder. The trial court entered an order finding that the Board's minutes from the January 5 and 20, 2009 meetings were insufficient, and issued a remand order instructing the Board to amend its minutes to include the dollar amount of Howell's and Bassfield Texaco's bids and include either a report or affidavits by the sheriff and Board members who inspected Howell's facility. On January 19, 2010, the Board met and amended its January 5 and 20, 2009 minutes to include the information requested by the trial court.

¶7. On February 8, 2010, Howell filed a second notice of appeal taking issue with the Board's decision to rescind its award of the bid to Howell and the Board's amendments of its January 5 and January 20, 2009 minutes. The trial court accepted Howell's second notice of appeal as timely and issued a final ruling on April 5, 2010, affirming "both (1) the Board's January 20, 2009 decision to the use the alternate bidder under Mississippi Code Annotated section 31-7-13(f) and (2) its January 19, 2010 amendments of the January 2010 minutes." *Howell v. Bd. of Sup'rs of Jefferson Davis Cnty. (Howell I)*, 70 So. 3d 1148, 1152 (¶10) (Miss. Ct. App. 2011).

¶8. Howell appealed the trial court's decision, and this Court held that as "the primary bidder, Howell had a vested property interest entitled to due-process protection." *Id*. at 1151

(¶2). As a result, in *Howell I*, this Court reversed the judgment of the trial court after determining that the trial court "erroneously relied on provisions in Mississippi Code Annotated section 31-7-13 . . . to justify depriving Howell of this interest without notice and a hearing." *Id*. at 1156-57 (¶31). In *Howell I*, this Court then remanded the case to the trial court.[3] *Id*. at 1157 (¶32). Upon remand, the trial court remanded to the Board and ordered that the Board provide Howell a due-process hearing. *Id*. at 1156-57 (¶31). The Board then held Howell's due-process hearing on December 5, 2011. Upon conclusion of the hearing, the Board went into an executive session[4] and found its earlier decision to rescind Howell's contract to be justified and awarded Howell $20 in nominal actual damages for the absence of a due-process hearing in January 2009. We now turn to review the evidence from that due-process hearing.

¶9. At the December 5, 2011 due-process hearing, the Board heard testimony from Howell, as well as her daughter, Michelle Howell, who was Howell's employee. The Board also heard testimony from Sheriff McCullum. Michelle testified that Lickety Splitz

---

[3] In *Howell I*, Howell asked this Court to reverse and render and award her contractual damages and consequential costs and fees; however, this Court found "any award of damages inappropriate at this stage." *Howell I*, 70 So. 3d at 1157 (¶32).

[4] In setting forth the factual chronology of this case, we acknowledge that the Board went into executive session. This acknowledgment, however, indicates no comment on the propriety of such executive session, and no issue was raised on appeal concerning the Mississippi Open Meetings Act. *See* Miss Code Ann. § 25-41-1 (Rev. 2010) (establishing open-meetings requirements for public boards and public meetings); Miss. Code Ann. § 25-41-7 (Rev. 2010) (establishing exemptions from open-meetings requirements and setting forth what a public body may address in executive session); Miss. Att'y Gen. Op., 2002-0342, 2002 WL 1833281, *Nowak* (July 10, 2002) (opining that contract negotiations are not exempt from open-meetings requirements).

previously received mainly "A" grades from the Health Department, with the exception of one "B." Michelle explained that Lickety Splitz received the "B" grade for one year because the privilege license was placed on the shelf instead of hanging on the wall, as required. Michelle also testified that she never cooked meals at a residence to bring to the meal-preparing facility, as alleged by Sheriff McCullum.

¶10. Howell also provided testimony about the events on the day the sheriff came to the meal-preparation facility to perform an inspection, and contrary to Sheriff McCullum's claims, she denied his assertion that she possessed food in her car to deliver to customers that she prepared elsewhere. The minutes from the due-process hearing reflect Howell's testimony that

> for the year 2009, she had the contract for inmate meals at the Collins city jail, the Covington County jail, and the Jefferson Davis County jail. She . . . "believed" she had the facilities and personnel to handle all three contracts, but that if it developed that she did not, she would hire additional help and purchase additional equipment.

¶11. At this hearing, Sheriff McCullum stated that when he went to inspect Lickety Splitz's meal-preparation facility, he observed a "regular" refrigerator and oven inside of the facility, rather than a commercial refrigerator or oven. Sheriff McCullum stated that he saw no food or cooking utensils at the facility. Sheriff McCullum again described his impressions and observations of the facility resulting from his inspection. Sheriff McCullum opined that based on his inspection, he was not confident that Lickety Splitz could provide meals to the Jefferson Davis County inmates on a regular basis. Sheriff McCullum claimed he possessed prior commercial restaurant experience, testifying that he owned a restaurant for several

years, as well as a grocery store with a deli.

¶12. The minutes from the due-process hearing further reflect that Sheriff McCullum also provided testimony about his experience with Bassfield Texaco, explaining that

> he had eaten there often prior to January 2009, and that the restaurant at Bassfield Texaco serves meals seven days a week. He testified that he was confident at the time that Bassfield Texaco could reliably provide inmate meals seven days a week for the duration of the 2009 contract. He also testified that after the alternate bid of Bassfield Texaco was used for the 2009 contract, he inspected the kitchen at Bassfield Texaco even though he had eaten there often before the award. He testified that Bassfield Texaco had commercial stoves, a walk-in cooler, and all the necessities of a working commercial food preparation facility.

¶13. In its executive session, the Board then found its earlier decision to rescind Howell's contract justified, and further found Howell entitled to no award of damages. The Board awarded Howell $20 in nominal actual damages for the absence of a due-process hearing in January 2009.

¶14. After the hearing and the Board's executive session, the Board entered an order finding that it was "fully justified in its prior action of January 20, 2009, at which time the Board previously rescinded the award of the contract to Howell for inmate meals for the 2009 calendar year and awarded the contract to the alternate bidder." The Board explained that it found Sheriff McCullum's testimony credible, and the Board concluded that Howell's meal-preparation facility was "not sanitary enough for the preparation of inmate meals." The Board further stated that Howell "was not forthcoming in all respects," citing as an example her refusal to provide her income-tax returns so that the Board could see the amount of business expenses she reported in association with inmate meals prepared for other jails. The

record shows that to determine damages, Howell requested a prisoner meal count for 2009 and information related thereto. However, the county refused to provide information as to how many meals had been provided during that time because the county sought Howell's tax returns as a quid pro quo. The Board found that Howell's "unwillingness to be candid about her expenses caused the Board concern about whether she was fully candid in the testimony she did give." As stated, the record reflects that the county wanted information about Howell's profit and tax-return information before it would provide her the prisoner's meal-count information.

¶15. Howell again filed an appeal in the trial court, which the trial court denied. On September 27, 2013, Howell then filed this appeal in this Court claiming error in the trial court's August 26, 2013 order and decision denying her appeal to that court from the actions and decisions of the Board. Before this Court, Howell asserts the following assignments of error: (1) the trial court abused its discretion in remanding the matter to the Board rather than deciding the issues at a hearing; (2) the Board improperly considered matters outside of the bid specification; and (3) the Board's actions were arbitrary and capricious.

## STANDARD OF REVIEW

¶16. The standard of review of an order of a board of supervisors is well established. An administrative agency's conclusions will remain undisturbed unless the agency's order is: (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope or power granted to the agency, or (4) in violation of the employee's statutory or constitutional rights. *Miss. Dep't of Emp't Sec. v. Good Samaritan Pers. Servs.*, 996 So. 2d 809, 812 (¶6)

8

(Miss. Ct. App. 2008). This Court will conduct a de novo review of questions of law. *A&F Props. v. Madison Cnty. Bd. of Sup'rs*, 933 So. 2d 296, 299-300 (¶6) (Miss. 2006).

## DISCUSSION

¶17. As acknowledged, this case is again before this Court. In *Howell I*, we previously found the trial court erred in applying section 31-7-13(f) to affirm the Board's termination of Howell's contract without providing Howell with notice and a hearing. *Howell I*, 70 So. 3d at 1156 (¶30).[5] In *Howell I*, we explained specifically that we passed no judgment on the substance of the Board's decision to stop using Howell's contracted services. *Id*. Due to the violation of Howell's constitutional right to due process for lack of notice and hearing, we reversed the trial court's judgment that affirmed the Board's decision to end Howell's contract. *Id*. at 1157 (¶31).

¶18. We also remanded the case to the trial court to provide Howell with proceedings that afford her procedural due process. *Id*. We further explained that the remand was to provide Howell "the opportunity to defend against the Board's claims that it justifiably stopped using her meal service—as well as comply with section 31-7-13." *Id*. We denied Howell's request for damages because such request was premature, since the Board had not provided Howell with a due-process hearing. *Id*. at (¶32). Without such, no determination could be made as

---

[5] "Howell argues the Board's actions were illegal for several reasons. Although we address her arguments below, our two main concerns are (1) the timing of the two notices of appeal and (2) the Board's failure to notify Howell of the January 20, 2009 meeting where it decided to use the alternate bidder." *Id*. at 1156 (¶28).

9

to whether the Board possessed justification to terminate her prisoner-meal contract. *Id.*[6]

¶19.　The procedural history herein reflects that upon our remand to the trial court, the trial court in turn remanded the case to the Board, with instructions to provide Howell a due-process hearing.[7] The record of that Board hearing is now before us.[8] In considering Howell's assignments of error, we now review the record of the due-process hearing and the Board's related decision, and its justification to rescind Howell's contract.[9]

¶20.　Since the bid specifications control the items appropriate for the Board to consider in accepting bids, we now turn to a review of these bid requirements. The record reflects that the advertisement by the county for bids provided the following specifications:

> Notice is hereby given that the Board of Supervisors of Jefferson Davis County, Mississippi, will receive *sealed bids* . . . for the sale to and furnishing to the County at large and the separate road districts thereof for the calendar year of 2009 the following:
>
> . . . .
>
>> Maintenance and operation of county offices, jail facilities, equipment, buildings, and grounds including *prisoner meals* and pest control of Jefferson Davis County.

---

[6] *See* Miss. Code Ann. § 31-7-13(d)(i) (bid requirements and bid procedures providing no governing authority shall accept a bid based on items not included in the specifications).

[7] In *Howell I*, Howell asked this Court to reverse and render and award her contract damages and consequential costs and fees; however, this Court found "any award of damages inappropriate at this stage." *Howell I*, 70 So. 3d at 1157 (¶32).

[8] *See* Miss. Code Ann. § 31-7-13(d)(i); *see also* Miss. Att'y Gen. Op., 2003-0420, 2003 WL 22139821, *Moore* (Aug. 15, 2003) (If acceptance of bid is revoked, the Board must "spread on the minutes the details as to why it did not accept the lowest bid.").

[9] *See* Miss. Code Ann. § 31-7-13(d)(i).

Specifications on materials and items, where applicable, shall be equal or better than state bid specifications, and the Board shall purchase under state contract prices or less, unless reasonably unavailable.

Bids, which do not contain a certification and where such bids do exceed state contract prices, will not be considered.

(Emphasis added).

¶21. The record shows that Howell's responsive bid included the bid price, and also provided:

The following bid is for the feeding of the inmates for [Jefferson] Davis County Jail. The bid is based on the advertisement for bids. Meals will be delivered at times set by the sheriff's department. Lickity Splitz is certified by the State of Mississippi Department of Health and has general liability insurance[;] a copy of all certificates will be provided upon request of the Board.

¶22. Our review of the record shows that the Board's order accepting Howell's bid states:

Whereas, at the time, place, and date fixed for receiving said bids, the Board opened and considered all bids submitted, and now finds and determines that the bids for the respective contracts and supplies and services listed are either (a) at or lower than net state bid prices under state contracts, or (b) are not subject to state bid prices under state contracts, and are the lowest, best, and most responsible bids submitted therefore, due consideration being given to the quality and specifications of the items herein accepted.

The Board then accepted Howell's bid for prisoner meals, providing in its order:

It is further ordered that the bids listed above be, and they hereby are approved and accepted for the items, services, and supplies listed therein and at the prices listed on said bids and that contracts be and the same hereby are awarded to the successful bidders for the period provided therein and not inconsistent with law, but not exclusively, the bidders consenting that in the event of necessity of public convenience, products, materials, and supplies of identical or better quality may be purchased under state bid contracts, and it is further ordered that the duly authorized agent of the Board of Supervisors be and is hereby authorized to place orders upon said contracts for the calendar

11

year 2009, and the purchases under the statutory limits may be purchased at not more than the public price as authorized by law, and that all purchases and procedures for purchase comply with all applicable laws of the State of Mississippi.

¶23. We now turn to apply the relevant law to the evidence from the due-process hearing held upon remand, and the Board's decision upon conclusion of that hearing. A review of the aforementioned bid advertisement, bid order, and Howell's bid reflects that Howell's bid met the advertised specifications. The record reflects that she possessed general liability insurance, was certified by the State of Mississippi Department of Health, and possessed the required certificates. The record reflects that the Board rescinded the award of the contract to Howell despite her compliance with bid requirements and certifications and without any showing that she failed to comply with the published bid requirements or terms of her bid. Moreover, as set forth in *Howell I*, the Board rescinded Howell's contract without notice or hearing, notifying her by letter only four days after awarding her the contract.

¶24. The record reflects that the Board based its decision to rescind Howell's contract largely on testimony from Sheriff McCullum. We acknowledge that Mississippi Code Annotated section 19-25-71 (Rev. 2012) indeed recognizes the authority of a county sheriff as a county jailer. As such, he possessed authority to serve as administrator of the jail and ensure that services were properly provided to the jail. We previously recognized such authority in *Howell I*. Any such inspection relied upon to rescind a contract, however, must apply the standards required by the bid specifications—and not some arbitrary, subjective standard not contained in the bid specifications. *See* Miss. Code Ann. § 31-7-13(d)(i).

¶25. In reviewing the standards or criteria relied upon by Sheriff McCullum, we also

12

recognize that the bid specification allowed local caterers or restaurants to bid, and section 19-25-73 allows local caterers or restaurants to provide food to prisoners. A hospital also possesses authority to contract to provide such meal services if found to be a caterer.[10] The Legislature intended to provide reasonable alternatives for feeding prisoners in the most cost-effective manner.[11] Sheriff McCullum's complaints that Howell lacked walk-in freezers, commercial-grade refrigerators, or a commercial-grade oven pertain to matters not required by the bid specifications or by Howell's contract.

¶26. The record of the hearing reflects that the Board acted arbitrarily and based its decision upon the testimony of Sheriff McCullum, as opposed to the bid specifications herein. Nothing in the record before the Board reflects that Sheriff McCullum utilized, or knew, the applicable state inspection standards and licensing standards established by the State Department of Health, and no evidence in the record or transcript of the hearing disputed that Howell possessed the required certification, insurance, and licensure. The right to inspect is premised upon reasonableness in place, time, and manner, and local caterers are authorized by statute to provide these services. *See Howell I*, 70 So. 3d at 1155 n.1; Miss. Code Ann. § 19-25-73(1); Miss. Att'y Gen. Op., 93-0166, 1993 WL 669226, *Dyson* (Mar. 17, 1993). The record reflects that Sheriff McCullum testified that he believed Howell could not perform the services required by the contract. However, the record shows that his inspection occurred the day after the award and before performance of the contract had

---

[10] Miss. Att'y Gen. Op., 93-0964, 1994 WL 68461, *Barry* (Feb. 24, 1994).

[11] Miss. Att'y Gen. Op., 1989 WL 504469, *Dobbs* (May 22, 1989).

13

begun, even though no issue or problem with performance had occurred. The record of the hearing also reflects evidence of her successful performance of similar meal-service contracts to another county and another municipality. Sheriff McCullum's testimony was based on matters outside of the bid specifications, his own subjective criteria, and therefore lacked credible basis upon which the Board could base its decision.

¶27. In finding its prior decision to rescind the contract justified, the Board included consideration of Howell's refusal to provide the Board with her tax returns. Howell had requested that the Board provide her with a meal count to determine the number of meals that she would have provided under the contract in 2009 to determine her claim for damages. However, the Board not only refused to provide the requested meal count due to Howell's refusal to provide her tax returns, but also considered this matter in justifying its prior decision. In summary, the Board determined Howell's testimony about her ability to perform under the contract lacked credibility because she refused to provide her tax returns to the Board.

¶28. The evidence provided at the due-process hearing held upon remand shows no dispute as to Howell's certificates and rating by the health department or any dispute as to the evidence presented showing her satisfactory performance of other prison catering contracts in the Covington County prison and Collins jail. The record further reflects that Howell testified that she could hire additional personnel and purchase additional equipment in the event such was needed to fulfill the contract. In addition to the testimony of Howell and Michelle, Howell provided the Board with letters from the chief of the Collins Police Department and the chief deputy of the Covington County Sheriff's Department attesting to

14

her good contract performance for prisoner meals for their jails.

¶29. Howell claims that the evidence presented at the due-process hearing on December 5, 2011, proves that she is well qualified to provide meals to the prison, and also that the Board's decision was arbitrary. She further asserts that the trial court should have conducted its own hearing, rather than remanding the matter back to the Board for a hearing. Howell cites to *City of Durant* and claims that the trial court was supposed "to render [the] judgment which [the Board] ought to have rendered." *City of Durant v. Laws Constr. Co.,* 721 So. 2d 598, 600 (¶4) (Miss. 1998).

¶30. Howell also argues that the Board failed to properly consider damages she sustained as a result of the revocation of her contract, and as a result, the Board rendered an unfounded and arbitrary amount of nominal damages in the amount of $20. As discussed, the record shows that Howell and her counsel requested from the Board the meals-per-day count for 2009, which Howell needed to determine lost-profit damages, but the Board refused to disclose the information. The record shows that the Board claimed refusal to disclose was proper because no public-record request was made and because Howell refused to provide her tax returns for the Board to review. The Board's attorney also provided that the Board's refusal to disclose the gross meal count to Howell was because the Board determined the requested information to be irrelevant or not probative. Howell alternately argues that the information constituted a public record and was relevant and probative, since this Court had directed that, on remand, she could present evidence of damages. Regarding damages, Michelle testified at the due-process hearing that she could provide a lost-profit-damage amount if she was provided the meals-per-day count for 2009. We now turn to address

15

Howell's claims of error in the trial court's remand to the Board for Howell's procedural hearing, the Board's decision, and the determination of damages.

¶31.     A review of *Howell I* reflects that this Court reversed and remanded to the trial court. The trial court then remanded to the Board to provide Howell with a due-process hearing and "the opportunity to defend against the Board's claims that it justifiably stopped using her meal service—as well as comply with section 31-7-13." *Howell I*, 70 So. 3d at 1157 (¶31). After such hearing, the Board was also required to decide whether or not the prior rescission was justified. We find the trial court properly remanded to the Board to provide Howell with a due-process hearing and consider evidence presented therein to determine if its prior contract rescission was justified. Additionally, after such hearing upon remand, the Board was required to "spread on the minutes the details" and reason for rejecting the primary bidder. Miss. Att'y Gen. Op, 2003-0420, 2003 WL 22139821, *Moore* (Aug. 15, 2003); *see* Miss. Code Ann. § 11-51-75 (Rev. 2012). A supplementation of the factual basis of the Board's justification after the hearing was required to allow for judicial review of the Board's decision. Such factual supplementation of the record was required for rescission of the contract, and to comply with statute.[12]  "A [trial] court, sitting as an appellate court, enjoys the same authority to remand a case to an inferior body for record supplementation or a factual determination while at the same time retaining jurisdiction over both the parties as well as the subject matter." *City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1279 (Miss. 1992); *see also* Miss. Code Ann. § 11-51-75. Here, the trial court retained jurisdiction upon remand

_____

[12] *See* Miss. Code Ann. § 31-7-13(d)(i).

16

and upon supplementation of the record by the Board.  Once the Board provided Howell with the required notice, due-process hearing, and its decision in the Board's minutes, the trial court should have then exercised its continuing jurisdiction to determine the remaining issues.  *Id.*[13]  As a result, we find that the trial court erred in allowing the Board to determine the issue of damages.  However, we find no error in the trial court's remand to the Board for Howell's due-process hearing and supplementation of the record with the evidence and minutes therefrom providing the factual basis for the Board's decision.  Upon appeal to the trial court from the Board after the hearing, the trial court then sat as an appellate court to determine if the evidence in the record before the Board supported the Board's factual justification for rescinding Howell's contract.  *See Wilkinson Cnty. Bd. of Sup'rs v. Quality Farms Inc.*, 767 So. 2d 1007, 1014 (¶24) (Miss. 2000) (The supreme court held that an "order remanding the case to the city council 'was not intended to constitute a final judgment contemplated by [section] 11-51-75.'"); *see also Good Samaritan Pers. Servs.*, 996 So. 2d at 812 (¶6); URCCC 5.03 (scope of appeals from administrative agencies).

¶32.    As acknowledged, after remand and after the due-process hearing and ruling from the Board, Howell again appealed to the trial court.  In its August 19, 2013 opinion, the trial court held that substantial evidence existed to support the Board's decision.  The trial court found that

> reasonable minds could debate which testimony—that of [Sheriff] McCullum or Howell—is more persuasive.  The Board apparently found McCullum the more compelling witness.  This decision of witness credibility, because it is fairly debatable, is beyond the court's review.

---

[13] *See* Miss. Code Ann. § 31-7-13(d)(i).

However, a review of the record shows that the testimony of Sheriff McCullum lacked a credible basis, relying instead on his subjective criteria, and rested upon matters outside the bid specifications. *See* Miss. Code Ann. § 31-7-13(d)(i). Thus, the decisions of the Board and the trial court were not supported by substantial credible evidence, but instead were arbitrary and capricious.[14]

¶33. Regarding the separate issue of damages, during its executive session, the Board found that "Howell did not put on any proof of any actual damages associated with the Board's delay in providing her with a due[-]process hearing alone," and awarded Howell nominal damages in the amount of $20. However, upon remand to the Board, the trial court retained jurisdiction over the determination of the issue of whether any damages were due to Howell, and the issue of determining whether the justification provided by the Board for rescinding Howell's contract set forth sufficient factual justification in compliance with statute. *See* Miss. Code Ann. § 11-51-75; *see also Baymeadows LLC v. City of Ridgeland*, 131 So. 3d 1156, 1162 (¶25) (Miss. 2014) (supreme court remanded "to the Board either to issue the permit or provide an appropriate factual basis for its denial"). Therefore, the trial court erroneously remanded the issue of damages to the Board and utilized an inapplicable standard of review thereto. *See City of Biloxi*, 597 So. 2d at 1279.

¶34. After reviewing the record, we find that the decision of the Board to rescind Howell's

[14] In *Howell I*, this Court found, after reviewing the record, that "[b]ased on the determination by the sheriff and Board members who visited [the] facilities that Howell's business was unsanitary and unsuitable for commercial food preparation, we cannot say, had the Board provided Howell with a hearing, it would have been unjustified in ending the contract." *Howell I*, 70 So. 3d at 1157 (¶32).

18

contract was arbitrary and not supported by substantial credible evidence in the record. The record reflects that, in its decision to rescind her contract, the Board erroneously relied upon matters not included in the bid specifications, Howell's bid, or the Board's order awarding the contract to Howell.[15] *See* Miss. Code Ann. § 31-7-13(d)(i). Accordingly, we reverse and render a finding that the Board's justification for recision of the contract herein is arbitrary, failed to comply with statute, and was not supported by substantial credible evidence. We also remand the issue of damages for the Jefferson Davis County Circuit Court to determine. *Good Samaritan Pers. Servs.*, 996 So. 2d at 812 (¶6).

¶35. **THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON DAVIS COUNTY IS REVERSED AND REMANDED IN PART, AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON DAVIS COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**MAXWELL, J., DISSENTING:**

¶36. In light of *Howell I*, I disagree the Board acted arbitrarily and capriciously. Instead, following remand from this court, the Board did exactly what the majority of this court asked it to do.

¶37. In *Howell I*, the majority sent this case back to provide Howell "the opportunity to defend against the Board's claims that it justifiably stopped using her meal service[.]" *Howell v. Bd. of Sup'rs of Jefferson Davis Cnty.* (*Howell I*), 70 So. 3d 1148, 1157 (¶31)

---

[15] *Good Samaritan Pers. Servs.*, 996 So. 2d at 812 (¶6); *see also* URCCC 5.03.

(Miss. Ct. App. 2011). We did not send it back for the Board to reconsider Howell's bid—because we rightly recognized her bid had been accepted and a contract between Howell and the Board had been formed. *Id.* at 1155-56 (¶¶27-28). So the question was no longer could the Board reject Howell's bid. Instead, it was could the Board justifiably terminate Howell's contract. *Id.* at 1157 (¶32).

¶38. Nor did we instruct the Board to limit its consideration to the bid specifications. Nowhere in our 2011 decision did we signal that the Board improperly considered the sheriff's and its own members' input that Howell's facility was unsanitary and unsuitable for commercial food preparation. In fact, the very reason the majority in that opinion did not declare the Board's actions a breach of contract, as the dissent would have, was because we found the sheriff's and Board members' concerns—concerns that could not be gleaned from the face of Howell's bid—were valid and possibly justified the Board's recision of Howell's contract. *See id.*

¶39. In other words, the problem a majority of this court had with the Board's 2009 decision was *not* that the Board considered matters outside the bid specifications. The Board had been confronted with valid sanitation and health concerns over the food it was to provide the prisoners in its care. We found nothing arbitrary or capricious about the Board's taking those concerns seriously. The problem we found was that the Board did not give Howell the opportunity to defend herself. And afterwards, Howell chose not to challenge our very specific ruling, so this court's decision stood.

¶40. Following remand, the Board provided Howell the opportunity to be heard. But because substantial evidence supported terminating the contract, the Board stayed with its

20

original decision. To me, the Board has done all that was required.

¶41. My concern is that the majority now faults the Board for acting arbitrarily and capriciously when all the Board did was follow our specific mandate. It does so by creating an issue that was not in play on remand. Put differently, what today's majority opinion actually does is reverse our earlier decision in *Howell I*.

¶42. And regardless of the majority's new justifications for reversal, the fact is, in *Howell I*, the majority of this court—including the author of today's majority opinion—*did* agree that the Board validly considered information it learned after Howell's bid was selected. In doing so, the *Howell I* majority remanded the case for one specific purpose—a due-process hearing. And the Board complied with our mandate.

¶43. My view has not changed. I find the original assessment in *Howell I*—that we were dealing with a Board's decision to terminate a contract based on legitimate health and welfare concerns, not a Board's decision to reject the lowest bidder—was the correct one. I find any previous due-process concerns we had in that appeal were adequately addressed by the Board's 2011 hearing, which necessarily covered matters outside the bid specifications.

¶44. For this reason, I dissent. I would affirm the lower court's judgment, which upheld the Board's decision.