MAXWELL, J.,
dissenting:
¶ 36. In light of Howell I, I disagree the Board acted arbitrarily and capriciously. Instead, following remand from this court, the Board did exactly what the majority of this court asked it to do.
¶ 37. In Howell I¡ the majority sent this case back to provide Howell “the opportunity to defend against the Board’s claims that it justifiably .stopped, using her meal service!)]” Howell v. Bd. of Sup’rs of Jefferson Davis Cnty. (Howell I), 70 So.3d 1148, 1157 (¶ 31) (Miss.Ct.App.2011). We did not send it back for the Board to reconsider Howell’s bid — because we rightly recognized her bid had been accepted and a contract between Howell and the Board had been formed. Id, at 1155-56 (¶¶ 27-28)., So the question was no longer could the Board reject Howell’s bid, Instead, it was could the Board justifiably terminate Howell’s contract. Id. at 1157 (¶ 32).
¶ 38. Nor did we instruct the Board to limit its consideration to the bid specifications. Nowhere in our 2011 decision did we signal that the Board improperly considered the.sheriffs and its own, members’ input that Howell’s facility was unsanitary and unsuitable for commercial food preparation. In fact, the very reason the majority in that opinion did not declare the Board’s actions a breach of contract, as the dissent would have, was because we found the sheriffs and Board members’ concerns — concerns that could not be gleaned from the face of Howell’s bid — were valid and possibly justified the Board’s recision of Howell’s contract. See id.
¶ 39. In other words, the problem a majority of this court, had with the Board’s 2009 decision was not, that the Board considered matters outside the bid specifications. The Board had been confronted with valid sanitation and health concerns over the food it was to provide the prisoners, in its care. We found nothing arbitrary or capricious kbout the Board’s taking those concerns seriously. The problem we found was that the Board did not give Howell the opportunity to déí'end herself. *46 And afterwards, Howell chose not to challenge our very specific ruling, so this court’s decision stood.
If 40. Following remand, the Board provided Howell the opportunity to be heard. But because substantial evidence supported terminating the contract, the Board stayed with its original decision. To me, the Board has done all that was required.
¶ 41. My concern is that the majority now faults the Board for acting arbitrarily and capriciously when all the Board did was follow our specific mandate. It does so by creating an issue that'was not in play on remand. Put differently, what today’s majority opinion actually does is reverse our earlier decision in Howell I.
¶42. And regardless of the majority’s new justifications for reversal, the fact is, in Howell I, the majority of this court— including the author of today’s majority opinion — did agree that the Board validly considered information it' learned after Howell’s bid was selected'. In doing so, the Howell I majority remanded the cáse for one specific purpose — a due-process hearing; And the Board complied with our mandate.
¶ 43. My view has not changed. I find the original assessment in Howell I — that we were dealing with a Board’s decision to terminate a contract based on legitimate health and welfare concerns, not a Board’s decision to reject the lowest bidder — was the correct one. I find any previous due-process concerns we had in that appeal were adequately addressed by the Board’s 2011 hearing, which necessarily covéred matters outside the bid specifications.
¶ 44. For this reason, I dissent. I would affirm the lower court’s judgment, which upheld the Board’s decision.