536 So.2d 20 (1988)
David H. WICKS
v.
MISSISSIPPI VALLEY STATE University & Joe L. Boyer, etc.
No. 58105.
Supreme Court of Mississippi.
December 7, 1988.
Tyree Irving, Greenville, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Gail W. Lowery and Rickey T. Moore, Sp. Asst. Attys. Gen., Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and GRIFFIN, JJ.
PRATHER, Justice, for the Court:
The issue presented by this appeal questions the authority of a college or university president to withhold tenure status to a professor of that institution without due process of law. Resolution of this issue is found in the answer to the question of whether a professor had a property interest in his teaching position. This Court holds that there is no property interest in the grant of tenure.
On April 12, 1985, Dr. David H. Wicks filed, in the Chancery Court of Leflore County, Mississippi, his complaint against Mississippi Valley State University and Joe L. Boyer, in his official capacity as President, seeking a declaratory judgment. Wicks' complaint charged that Dr. Boyer's denial of tenure to him was violative of the tenure and promotion policy in effect at Mississippi Valley State University and that Dr. Boyer's denial of tenure to him was arbitrary and capricious without just cause or basis. The complaint also sought a preliminary and permanent injunction enjoining Mississippi Valley State University and Dr. Joe L. Boyer from denying tenure to him, effective with the 1984-1985 school year.
The trial judge denied the relief requested and from that decision, Dr. Wicks appeals assigning as error the following:
The trial court erred in finding that Dr. Joe L. Boyer has unfettered and unbridled discretion in granting and denying tenure and that the denial of tenure by Boyer to Wicks was not arbitrary and capricious.

*21 I.
Dr. David Wicks is a teacher of history and social studies at Mississippi Valley State University (hereinafter MVSU). Dr. Wicks began his employment at MVSU in the fall of 1962 when he was employed as Dean of Men and as an instructor in the History and Political Science Department. He remained with the University until 1964. He returned in 1966 and remained until 1969. He returned a second time in 1972 with the rank of Associate Professor. In June, 1982, he was promoted to rank of Professor. At the time he was promoted, Dr. Wicks lacked certification of the required minimum of 18 hours of instruction of study in his teaching field.
In the fall of 1983, Dr. Wicks applied for tenure. The revised 1983 Tenure and Promotions Policy was in force at the time of his application. That decisional process provides for the appointment of a Tenure and Promotion Committee to review all applications for both rank and tenure in light of the established guidelines and to make a recommendation to the President. Recommendations are also submitted by the department chair person, division chair person, and the Dean of Academic Affairs. The granting or denying of tenure is vested in the sole discretion of the President, but may be appealed to the Tenure and Promotion Appeals Committee. The policy outlines minimum qualifications which must be met before an individual will be considered for rank or tenure.
President Boyer reviewed the recommendations submitted pursuant to the tenure process and then made the decision to deny tenure to Dr. Wicks based on lack of credentials in the teaching field. Dr. Boyer informed Dr. Wicks of his decision by letter dated May 9, 1984, however, the letter erroneously stated that the Tenure and Promotion Committee had recommended that tenure be denied. Dr. Boyer explained in his testimony that a form letter was incorrectly typed by his clerk and that "we intended to say that Dr. Wicks would not be ... tenured because of insufficient hours in the teaching field." This explanation is corroborated by the fact that this error was made in four other letters where in Dr. Boyer had not agreed with the recommendation of the Tenure and Promotions Committee.
By letter dated March 12, 1984, Dr. Boyer had informed Dr. Wicks that he was deficient by six (6) hours to be minimally certified in history and deficient by eighteen (18) hours to be certified at the advanced level. Dr. Wicks had not made any effort to become minimally certified as of the date of trial.
Upon re-examination, it was discovered that Dr. Wicks had been erroneously granted a promotion to the rank of Professor since he did not meet the criterion for that rank. Dr. Wicks was denied tenure because of his lack of credentials in the teaching field, a very clearly stated criterion under the section on rank. President Boyer further testified that no one has been granted tenure at MVSU who was not minimally certified in their teaching field since he became President of the University.
Dr. Morris Marx, Vice Chancellor for Academic Affairs at the University of Mississippi, testified at trial as an expert in the field of tenure. Dr. Marx testified regarding tenure that:
(1) Tenure is the granting of continuing employment which cannot be terminated except for good cause;
(2) Tenure and rank are intimately related;
(3) The grant or denial of tenure is left to the discretion of the head of the University, i.e., tenure cannot be earned;
(4) The academic background of the individual in the teaching field is a crucial element for consideration in making a tenure decision;
(5) An individual's value to the institution, not only today, but twenty (20) years from now, must be taken into consideration prior to granting guaranteed employment;
(6) An institution has to consider an individual's training in his field and publication record to determine whether or not that person will be able to keep up with the changes and new developments in his field *22 and, thus, continue to be a valued employee to the institution; and,
(7) A person should be qualified for the rank in which they are being tenured because the institution is not only giving continuing employment in the university but is, in fact, giving continuing employment in that rank.
Based on a hypothetical question, Dr. Marx testified that he would not recommend tenure for Dr. Wicks due to his lack of hours in the teaching field. Dr. Marx noted that the Southern Association of Colleges, the Accreditation Group, requires eighteen hours (18) in the teaching field for a part-time graduate teaching assistant. Dr. Marx further testified that he had reviewed both the 1979 and 1983 tenure policies at MVSU and found them to be similar to those of other universities and that they do not contain any provisions which would conflict with his testimony.
Dr. Nathaniel Boclair, Dean of Academic Affairs at MVSU, testified that he recommended that Dr. Wicks be denied tenure based on lack of credentials in the teaching field.
Plaintiff called five (5) members of the Tenure and Promotions Committee to testify on his behalf who recommended tenure for Dr. Wicks; while one member did not agree with the decision to recommend tenure.
Plaintiff also called five (5) members of the Tenure and Promotions Appeals Committee to testify on his behalf. Dr. Cliff E. Williams testified that Dr. Wicks appeared at the hearing to state his position and that the Committee knew that tenure had been denied based on lack of hours in the teaching field. The Committee voted to deny tenure to Dr. Wicks stating:
... [T]he committee concluded that since tenure is granted to a person according to his or her faculty position and since a faculty position is an appointment to a particular discipline or academic program, the faculty credentials of the person seeking tenure should be considered.
Despite this, Dr. Wells, Dr. Stewart, Dr. Porchia and Dr. Williams testified at trial that if they had known that the Tenure and Promotions Committee had voted to grant tenure, then they would have also.

II.
The "first step in Fourteenth Amendment analysis of claims of taking and denial of procedural due process is to identify the property interest." Frazier v. Lowndes County, Miss. Bd. of Educ., 710 F.2d 1097, 1098 (5th Cir.1983); Fontana v. Barham, 707 F.2d 221, 226-227 (5th Cir.1983). "There can be no denial of procedural due process without a deprivation of liberty or property." Frazier, 710 F.2d at 1098. "[T]he range of interests protected by procedural due process is not infinite." Bd. of Regents v. Roth, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556-557 (1972).
To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
.....
Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law... .
Roth, 408 U.S. at 577, 92 S.Ct. at 2709.
The existence of a property interest is determined by constitutional law. Article 3 § 14 of the Mississippi Constitution provides that "No person shall be deprived of life, liberty, or property except by due process of law." A like provision is contained in § 1, Amend. XIV of the federal constitution, which states:
No state shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
The enforceable property interest in employment may be created by a state statute, or state regulation, or contract. *23 Therefore, a property interest in employment must be decided by reference to state law. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).
Section 37-101-15, Miss. Code Ann. (1972), sets forth the general powers and duties of the Board of Trustees of Institutions of Higher Learning of the State of Mississippi. Section 37-101-15(b) provides that the Board of Trustees has general supervision of all matters incident to the proper functioning of the University. Section 37-101-15(f) addresses employment of professors. It empowers the Board of Trustees to terminate employment contracts at any time for malfeasance, inefficiency or contumacious conduct, but does not create a legitimate expectation of continued employment for a non-tenured employee. Montgomery v. Boshears, 698 F.2d 739 (5th Cir.1983).
Just as there is no protected interest which arises from Mississippi statutes, there is none which arises from state regulations. If the state chooses not to restrict its administrators' discretion by objective criteria and mandatory language, then its regulation does not create a protective interest. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). No protected interest is created by a state rule or regulation which in no substantive way limits by particularized standards the discretion of the administrator. Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1982). Simply put, if the state regulation conditions receipt of a benefit upon a discretionary decision of an administrator, there is no legitimate claim of entitlement to the benefit.
Nor does the written tenure policy of MVSU create or confer an expectation of continued employment.
At MVSU, the President's decision to confer tenure is not restricted by a mandatory language such as "shall," "will" or "must." It is well recognized that the final decision to grant tenure lies with the President, and the grant of tenure is discretionary. The President is allowed to determine what is best for the University. As in Wells v. Doland, 711 F.2d 670 (5th Cir.1983), "there was no evidence to indicate that merely recommending tenure for [a] ... professor was tantamount to granting tenure at the University." Wells, 711 F.2d at 675. Dr. Wicks' mere subjective expectancy of tenure did not give him the constitutionally protected property interests necessary to invoke the Fourteenth Amendment's procedural due process provisions. As held in Roth, a non-tenured college teacher has no constitutionally protected property interest in his job.
If a plaintiff's expectation of tenure is not legitimate, then his expectation does not merit substantive protection under the due process clause. Bishop, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684; Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). MVSU, therefore, could deny tenure "for no reason, a reason based on erroneous facts, or for any reason it chose, except for a reason that violated plaintiff's constitutional rights." Megill v. Bd. of Regents of State of Florida, 541 F.2d 1073, 1077 (5th Cir.1976); Wood, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214; Bishop, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684.
Denial of tenure because of a desire to upgrade a department was found to be sufficient reasoning in Wells, 711 F.2d at 670.
"The whole purpose of the distinction between tenured and non-tenured faculty was to give the University discretion over the employment of non-tenured teachers... . The institution of tenure has an inexorable internal logic: the very existence of a tenure system means that those teachers without tenure are not assured of continuing employment. See Board of Regents v. Roth, supra, (non-tenured college teacher had no constitutionally protected property interest in his job)."
Staheli v. University of Mississippi, 854 F.2d 121, 125 (5th Cir.1988). As in Staheli, Dr. Wicks "is unhappy with the way that the University exercised its discretion, but that does not create in him a protected *24 property interest." Staheli, 854 F.2d at 125.
However much we might sympathize with Dr. Wicks, a decision in his favor would have perverse policy consequences. Dr. Wicks' claim is based upon relatively detailed contents of the written tenure policy coupled with an assertion that he has fulfilled its requirements.
If Wicks prevails, the following analysis of Staheli, supra, would apply in this case as well:
"the University will have received powerful incentives to make its tenure policy less specific and therefore less helpful to Associate Professors seeking to discern and fulfill the requirements for tenure. Moreover, the University may well seek to insure that its department heads do not give encouragement or approval to non-tenured candidates in the yearly review sessions, lest such assurances be held to have created property rights. The result is that [Dr. Wicks'] small victory would be a major defeat for future probationary teachers. They would be groping in the dark through a high-pressure, intricate process with even less guidance and information than they currently have.
At worst, [Dr. Wicks] was misled by his department head about his chances of making tenure. Whatever actual expectations [Dr. Wicks] may have had, they cannot be constitutionally baptized a "legitimate claim of entitlement" to permanent employment."
Staheli, 854 F.2d at 126.
The trial judge issued his opinion after conducting a two-day trial in which sixteen (16) witnesses appeared and testified. The chancellor concluded that the decision to deny tenure was not arbitrary and capricious, stating in his written opinion:
The President exercised the discretion that was in him to interpret the 1983 policy and to determine what was best for the University. I don't see it as capricious or as arbitrary. In fact, I agree with him, and with his expert and one or two other witnesses, that a grant of tenure to a person who does not currently qualify in rank would be poor policy for the University to follow ... It does seem that Dr. Wicks was not properly qualified to be appointed a professor in 1982 or in 1984. I don't think that error required the President to make still another error.
The holding by a trial judge as factfinder is entitled to the same deference as a jury verdict and will not be reversed upon appeal unless manifestly wrong. Rives v. Peterson, 493 So.2d 316 (Miss. 1986). Findings of fact made by a Chancellor may not be set aside or disturbed on appeal unless manifestly wrong. Smith v. Todd, 464 So.2d 1155 (Miss. 1985).
The opinion and judgment of the trial court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, J., not participating.