# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-00556-COA

**NATHAN FISHER**                                                      **APPELLANT**

**v.**

**JACKSON COUNTY SHERIFF'S DEPARTMENT**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/19/2019 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOSEPH RICHARD TRAMUTA |
| | RUSSELL S. GILL |
| ATTORNEY FOR APPELLEE: | H. BENJAMIN MULLEN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/18/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1.     The Jackson County Sheriff's Department terminated Nathan Fisher's employment after finding that Fisher violated the Department's policy regarding security of firearms by relinquishing control of his firearm to a civilian while responding to a domestic disturbance call. The Civil Service Commission for the Jackson County Sheriff's Department upheld Fisher's dismissal after finding that the Department terminated his employment in good faith for cause. Accordingly, the Commission denied Fisher's request for reinstatement and back pay. Fisher appealed the Commission's decision to the circuit court, and the circuit court affirmed, holding that the Commission's decision was supported by substantial evidence and

was not arbitrary or capricious. Fisher again appealed.

¶2.     Fisher argues that the Commission's findings that he violated departmental policy and that he was dismissed in good faith for cause are not supported by substantial evidence. He also argues that the Department violated his right to procedural due process by not affording him a pre-termination hearing. We conclude that there is substantial evidence to support the Commission's findings. Therefore, we affirm the Commission's decision upholding Fisher's dismissal and denying his request for reinstatement and back pay. We do agree with Fisher that he was entitled to notice of the charges against him and at least an informal opportunity to respond prior to his termination, and we agree that the Department violated Fisher's right to procedural due process by denying him such notice and opportunity to respond. However, we conclude that the lack of pre-termination process does not require reversal because Fisher was ultimately afforded a full and fair post-termination hearing, the Commission found that he was dismissed in good faith for cause, and there is nothing to suggest a pre-termination hearing would have prevented Fisher's dismissal. Accordingly, we affirm the judgment of the circuit court affirming the Commission.

**FACTS AND PROCEDURAL HISTORY**

¶3.     Deputy Fisher's employment with the Jackson County Sheriff's Department was terminated as a result of his response to a domestic disturbance at the home of Michael and Samantha Ransom on January 28, 2016. The Ransoms were estranged at the time, and Michael suspected Samantha of infidelity. The Ransoms argued, and Michael put a gun to his head and threatened to kill himself unless Samantha gave him her cell phone. Samantha

2

then gave Michael her phone. Michael looked at the phone's contents, destroyed the phone, and then left the house. He had parked his truck in the front yard, and "he coated the entire house and the neighbor's house and cars with mud" as he peeled out. Michael later returned to the home and apologized and then left again.

¶4.     Samantha called the Sheriff's Department because she was concerned about Michael's suicidal threats. Fisher responded to the call. Samantha was upset, and Fisher told her that she looked like she "need[ed] a hug" and "offer[ed] her a hug." According to Fisher, Samantha accepted his offer, and they "both hugged mutually." After he interviewed Samantha about the incident with Michael, Fisher asked her how she planned to protect herself and her children if something similar happened again in the future. Samantha showed Fisher a subcompact, small-caliber pistol that she kept in her purse. Fisher thought "[t]he caliber of the gun and the round capacity was not sufficient to protect [Samantha] and her family if faced with an imminent threat." Fisher told Samantha that she "really need[ed] to get something full-sized with a larger capacity." Samantha said she was not comfortable handling a full-sized weapon, but Fisher told her there were full-sized weapons she could handle, such as his gun. Fisher then removed the bullets from his gun and allowed Samantha to hold it. Fisher then took his gun back and re-loaded and re-holstered it. Before he left, he gave Samantha his business card and information about an organization that assists victims of domestic violence. Samantha later emailed Fisher to thank him.

¶5.     Michael was charged with misdemeanor domestic violence as a result of the incident. In April 2017, Michael's case went to trial in justice court. By time, the Ransoms had

3

reconciled. During the trial, Michael accused Fisher of hugging Samantha and handing her a loaded gun. Fisher denied the gun was loaded, but he admitted that he allowed Samantha to hold the gun after he had cleared it. The courtroom bailiff, Deputy Charles Fowler, heard this testimony and notified Captain Curtis Spiers, who then asked Captain Randy Muffley to conduct an internal investigation of Fisher's actions. In May 2017, Muffley interviewed Samantha and Fisher and conducted a computer voice stress analysis on Fisher. The analysis indicated that Fisher was not being deceptive when he stated that he had cleared his firearm before giving it to Samantha.

¶6. On June 12, 2017, after concluding his investigation, Captain Spiers prepared a Notification of Intent to Initiate Disciplinary Action and a Disciplinary Action List of Charges. Fisher was charged with violating Department Policy 2.06 (regarding professional conduct and conduct unbecoming an officer) and Department Policy 5.05 (regarding firearms training, use, and security).[1] Policy 5.05 provides in relevant part that "[a]n officer will provide maximum security of all firearms in his custody." Spiers recommended that Fisher be dismissed. On June 13, 2017, Fisher's division commander, the chief deputy, and Sheriff Mike Ezell signed off on Spiers's recommendation, and Fisher was given notice of his termination. The notice stated that Fisher was being terminated for the reasons stated in the disciplinary action notice prepared by Spiers. The notice also advised Fisher that he had ten days to file an appeal and request for investigation with the Civil Service Commission for

---

[1] There was also an allegation that Fisher failed to complete a DUI incident report. However, the Commission's decision did not mention the issue, nor is it raised as an issue on appeal.

4

the Department.[2] Fisher filed a timely appeal with the Commission, along with a request for copies of his disciplinary action notice and list of charges, which he had not received to that point. About two months later, Fisher finally received a copy of the requested documents.

¶7. The Commission held a hearing on Fisher's appeal on January 10, 2018. Captain Muffley testified that Samantha claimed that Fisher had handed her a fully loaded firearm. Samantha also told Muffley that she "thought it was a little strange that [Fisher] hugged her." According to Muffley, Samantha was upset that charges had been filed against Michael. She said she had called law enforcement "just . . . to get [Michael] some help" because he had threatened to kill himself. Captain Muffley subsequently interviewed Fisher, who insisted that he unloaded his gun before handing it to Samantha.

¶8. Fisher testified that Samantha was upset when he arrived on the scene, so he hugged her to comfort her. Fisher also stated that Samantha seemed fearful of handling a larger gun, and he was merely trying to show her that she could handle a larger gun. Fisher admitted that it had occurred to him that Michael could return to the house at any time. However, Fisher insisted that he would not have unloaded or relinquished possession of his gun if he felt the scene was unsafe.

¶9. On January 30, 2018, the Commission issued its findings of fact and decision, upholding the Department's decision to terminate Fisher's employment. The Commission

_____

[2] The Commission is established and governed by a local and private law. 1996 Miss. Local and Private Laws, ch. 935. The law's provisions governing disciplinary actions, appeals to the Commission, and appeals from the Commission are substantially similar to Mississippi Code Annotated section 21-31-21 and -23 (Rev. 2015). *See* 1996 Miss. Local and Private Laws, ch. 935, §§ 9-10.

found that "Fisher violated . . . Department policy 5.05 in failing to provide maximum security for all firearms in his custody when he relinquished control of his weapon to [Samantha]." For that reason, the Commission found that "Fisher was terminated for cause and in good faith for his actions on January 28, 2016." The Commission also found that "due process was afforded to Fisher during his termination and subsequent proceedings."

¶10. Fisher appealed the Commission's decision to the Jackson County Circuit Court. The circuit court affirmed, holding that the Commission's decision "was supported by substantial evidence, was not arbitrary or capricious, was not beyond the statutory power of the Commission," and did not "violate any statutory or constitutional right of [Fisher]." Fisher again appealed.

**ANALYSIS**

¶11. "A discharged police officer may appeal his or her termination to a civil service commission, which shall determine whether the decision to terminate the officer 'was or was not made for political or religious reasons and was or was not made in good faith for cause.'" *Renfro v. City of Moss Point*, 156 So. 3d 913, 917 (¶18) (Miss. Ct. App. 2014) (quoting Miss. Code Ann. § 21-31-23 (Rev. 2007)). The decision of a civil service commission may be appealed to circuit court. *City of Vicksburg v. Lane*, 11 So. 3d 162, 164 (¶10) (Miss. Ct. App. 2009). On appeal, the circuit court "is limited to determining whether the act of the commission was or was not made in good faith for cause." *Id.* "This Court follows the same standard of review as the circuit court and evaluates whether the commission's ruling is supported by substantial evidence." *Patterson v. City of Biloxi*, 965 So. 2d 765, 766 (¶6)

6

(Miss. Ct. App. 2007). We do not make "credibility determinations," reweigh the evidence, or "determine issues of fact regarding whether an employee was guilty of the charge or not." *City of Laurel v. Brewer*, 919 So. 2d 217, 221-22 (¶15) (Miss. Ct. App. 2005). Rather, we "only determine whether the commission acted in good faith based on the evidence before it." *Id.* at 222 (¶15). Therefore, we must affirm a commission's decision unless it is not supported by substantial evidence or is arbitrary or capricious. *City of Jackson v. Froshour*, 530 So. 2d 1348, 1355 (Miss. 1988).

¶12. "Substantial evidence . . . means something more than a mere scintilla of evidence" but something less than "a preponderance of the evidence." *Miss. Dep't of Hum. Servs. v. McNeel*, 869 So. 2d 1013, 1018 (¶19) (Miss. 2004) (quotation marks omitted) (quoting *Delta CMI v. Speck*, 586 So. 2d 768, 773 (Miss. 1991)). "[I]t means such relevant evidence as reasonable minds might accept as adequate to support a conclusion" or to "afford[] a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id.* (quotation marks omitted) (quoting *Delta CMI*, 586 So. 2d at 773). In addition, if a "decision is supported by substantial evidence, then it is not arbitrary or capricious." *Miss. Transp. Comm'n v. Anson*, 879 So. 2d 958, 964 (¶17) (Miss. 2004).

¶13. On appeal, Fisher argues (1) that Department Policy 5.05 is "unconstitutionally vague"; (2) that the Commission's findings that he violated Policy 5.05 and that he was dismissed in good faith for cause are not supported by substantial evidence and are arbitrary and capricious; (3) that the Department violated his right to due process by denying him a hearing or opportunity to respond to the charges against him prior to his termination; and (4)

7

that he is entitled to reinstatement and back pay. We address these issue in turn below.

### I. Fisher waived his constitutional challenge to Department Policy 5.05. In any event, the Policy is not unconstitutionally vague.

¶14. Department Policy 5.05 states in relevant part that "[a]n officer will provide maximum security of all firearms in his custody." Fisher argues this provision is "unconstitutionally vague" because (1) "it can reasonably be read to both allow and prohibit Fisher's conduct" and (2) "its plain language would arguably necessitate finding that a deputy violates the policy any time he or she removes a firearm from a gun safe." Fisher also asserts that the policy does not expressly prohibit a civilian from handling an officer's firearm.

¶15. The Department argues that Fisher waived this issue by failing to raise it before the Commission. *See Little v. City of Jackson*, 375 So. 2d 1031, 1033 (Miss. 1979) (finding employee waived his due process argument on appeal by failing to raise the issue before the civil service commission); *Pepper v. City of Jackson,* 88 So. 3d 806, 809 (¶12) (Miss. Ct. App. 2012) (holding that an employee's arguments that her suspension "was politically motivated" and "constitute[d] 'double jeopardy'" were "procedurally barred, as they were never brought before the [civil service commission]"). In response, Fisher argues that he preserved the issue because his attorney questioned witnesses as to whether the policy specifically prohibited Fisher from handing his gun to a civilian.

¶16. We agree with the Department that Fisher waived this constitutional claim. Although counsel did ask witnesses about the specificity of the policy's language, the only claims that he made before the Commission were that he was dismissed without cause and that his dismissal without a pre-termination hearing violated procedural due process. He did not

8

make a void-for-vagueness argument until his appeal before the circuit court, which appropriately limited its review to those issues decided by the Commission. Therefore, we find Fisher has waived this issue.

¶17. Waiver notwithstanding, this argument is also without merit. "Most of the void for vagueness cases have arisen in the context of criminal prosecutions." *Vance v. Lincoln Cnty. Dep't of Pub. Welfare*, 582 So. 2d 414, 419 (Miss. 1991) (quoting *Transcontinental Gas Pipeline Corp. v. State Oil & Gas Bd.*, 457 So. 2d 1298, 1323 (Miss. 1984), *rev'd on other grounds*, 474 U.S. 409 (1986)). The doctrine also "applies to civil statutes and regulations," *id.*, "although such a challenge contemplates a less exacting standard of review." *Meeks v. Tallahatchie Cnty.*, 513 So. 2d 563, 566 (Miss. 1987). A regulation is unconstitutionally vague only if it "forbids or requires the doing of an act in terms so vague that persons of common intelligence must guess at its meaning." *Wilcher v. State*, 227 So. 3d 890, 896 (¶29) (Miss. 2017) (quotation marks omitted). "[T]he test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Fulgham v. State*, 47 So. 3d 698, 701 (¶8) (Miss. 2010) (alteration omitted) (quoting *Jordan v. De George*, 341 U.S. 223, 231-32 (1951)). "A rule or standard is not objectionable merely because it is stated in general terms and is not susceptible of precise application." *Vance*, 582 So. 2d at 419 (quoting *Transcontinental Gas Pipeline Corp.*, 475 So. 2d at 1323). For example, no one "would seriously argue" that familiar standards such as "negligence, unconscionability, [and] fraud" are "unconstitutionally vague." *Id.* Finally, a regulation is more likely to be upheld against a

9

vagueness challenge if it does not regulate constitutionally protected activity. *Fulgham*, 47 So. 3d at 702-03 (¶¶13-15) (citing *Roark & Hardee LP v. City of Austin*, 522 F. 3d 533, 548 (5th Cir. 2008)). In such a case, we primarily consider whether the party challenging the regulation had fair notice that his own conduct was proscribed by the regulation. *Id.*

¶18. Applying these standards, Department Policy 5.05 is not unconstitutionally vague. The policy does not proscribe or regulate any constitutionally protected activity but merely regulates the manner in which an officer secures his firearms. Furthermore, its language requiring officers to "provide maximum security of all firearms in his custody" gave Fisher fair notice that his own conduct—handing over his gun to a civilian in the aftermath of a domestic violence incident—was contrary to departmental policy.

**II.     The Commission's findings that Fisher violated Policy 5.05 and that he was dismissed in good faith for cause are supported by substantial evidence and are not arbitrary or capricious.**

¶19. As discussed above, the Commission found that Fisher had violated Policy 5.05 and that he was dismissed in good faith for cause. Fisher claims that the Commission's findings are not supported by substantial evidence and are arbitrary and capricious. Specifically, he argues that because he "was in a position to quickly access his gun if needed, and it could not have been used against him under the circumstances," he did not violate Policy 5.05.

¶20. "So long as substantial evidence exists, an agency's finding must be allowed to stand even though there might be room for disagreement on that issue." *Breland v. City of Hattiesburg*, 276 So. 3d 1217, 1221 (¶12) (Miss. Ct. App. 2018) (quoting *Miss. Pub. Serv. Comm'n v. Merchants Truck Line Inc.*, 598 So. 2d 778, 782 (Miss. 1992)). As stated above,

10

"substantial evidence" is "more than a mere scintilla of evidence" but less than "a preponderance of the evidence." *McNeel*, 869 So. 2d at 1018 (¶19) (quotation marks omitted) (quoting *Delta CMI*, 586 So. 2d at 773).

¶21. In this case, the Commission considered the testimony of Fisher, Sheriff Mike Ezell, the officers who conducted the internal investigation of Fisher, and other witnesses. Major Ray Bates, a certified firearms instructor for the Department, testified that Policy 5.05 was important because an officer's "handgun is [his] primary means of using authorized deadly force to defend [his] life or the life of another." Captain Spiers testified about the Department's concerns regarding Fisher's actions during the call to the Ransoms' home:

> The deputy was on a call where an estranged husband held a weapon to his head threatening to kill himself. He sped off in a vehicle. We don't know where that subject is. We know he's got a gun. We're there because of a domestic assault or a domestic event. And the ultimate responsibility under our level of force continuum for a law enforcement officer is lethal force. And if you don't have that weapon to defend the victim or defend yourself, . . . you're negligent and you're conducting yourself unlawful[ly].

¶22. Fisher admitted that he cleared his firearm and handed it to Samantha, a person he had never met before, during an active domestic-disturbance investigation. He also stated that Samantha's estranged husband "needed to go into custody immediately as soon as we could find him so that he did not kill himself or anyone else." Fisher admitted that he "made a mistake that night in letting [Samantha] hold [his] gun." Given these facts, there is substantial evidence to support the Commission's findings that Fisher violated Policy 5.05 and that the Department terminated Fisher's employment in good faith for cause. Therefore, we are bound to affirm the Commission's decision.

11

**III.    The Department violated Fisher's right to procedural due process by not providing him an opportunity to respond to the charges against him prior to his termination.**

¶23.    The Commission determined "that due process was afforded to Fisher during his termination and subsequent proceedings," and the circuit court affirmed the Commission's ruling.  On appeal, Fisher argues that the Department violated his due process rights by failing to follow its own progressive discipline policy and by denying him an opportunity to respond to the charges against him prior to his termination.

¶24.    With respect to the progressive discipline policy, Fisher argues that "his actions could have been corrected with simple supervisory consulting from his shift supervisor." Therefore, he argues the Department's "disregard for [its] own system of progressive discipline shows that [his] termination was made not for good cause, but in bad faith."  We disagree.

¶25.    The Department's Rule 3.07, governing disciplinary actions, does state that the "[d]iscipline of department employees is progressive in nature" and outlines steps of progressive disciplinary actions:  (1) remedial training; (2) written warning or reprimand; (3) suspension; (4) demotion; and (5) termination.  However, Rule 3.07 also provides that although "[p]rogressive disciplinary measures are generally followed[,]" "any extenuating or mitigating factors may be considered when determining the discipline to be imposed." Moreover, Rule 3.07 further provides that "[d]ischarge from the department may be imposed for a first offense and may be imposed at any point in a progressive chain, whether or not any other step(s) of progressive discipline have first been imposed."  Thus, the Department was

12

under no obligation to provide Fisher with progressive disciplinary measures for what the Department considered to be a serious, terminable offense.

¶26. Fisher's second argument is more substantial. The United States Supreme Court has "described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation marks omitted). In *Loudermill*, the Supreme Court held that due process "requires 'some kind of a hearing' prior to the discharge of [a public] employee who has a constitutionally protected property interest in his employment." *Id*. The Court further stated that "the pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 545. The constitutionally required pretermination hearing need not be a "full evidentiary hearing" or "definitively resolve the propriety of the discharge." *Id.* Rather, its essential purpose is to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 546. In this context, the employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story"—"either in person or in writing." *Id.*

¶27. We evaluate procedural due process claims using a two-step process. *Burleson v. Hancock Cnty. Sheriff's Dep't Civil Serv. Comm'n.*, 872 So. 2d 43, 49 (¶16) (Miss. Ct. App. 2003). We must determine (1) whether the claimant possesses a constitutionally protected "life, liberty or property interest," and if so, (2) "what process is required" before he may be deprived of that interest. *Id.* "[An] enforceable property interest in [public] employment

13

may be created by a state statute, or state regulation, or contract." *Wicks v. Miss. Valley State Univ.*, 536 So. 2d 20, 22-23 (Miss. 1988). "There is not a per se property interest in public employment[,]" but "if the employee cannot be dismissed except for cause, that creates a sufficient entitlement to require pre-termination process." *Bowie v. City of Jackson Police Dep't*, 816 So. 2d 1012, 1020 (¶31) (Miss. Ct. App. 2002) (Southwick, P.J., concurring) (citing *Loudermill*, 470 U.S. at 538-39). Thus, a law enforcement officer who "ha[s] statutory civil service protection such that he [can] only be terminated for cause" has a constitutionally protected property interest in his employment. *Id.*; *accord Bates v. City of Natchez*, 247 So. 3d 338, 341 (¶11) (Miss. Ct. App. 2018) (holding that a police officer with civil service protection had a property interest in his employment). Accordingly, Fisher clearly possessed a constitutionally protected property interest in his employment.

¶28. We must now determine what process was required in connection with the Department's termination of Fisher's employment. The civil service law for the Jackson County Sheriff's Department grants officers certain pre-termination protections and provides in relevant part:

> No person who has been permanently appointed or inducted into civil service under the provisions of this act, . . . shall be removed, suspended, demoted or discharged, or any combination thereof, except for cause, and only upon the written accusation of the sheriff or any citizen or taxpayer, a written statement of which accusation, in general terms, shall be served upon the accused, and a duplicate filed with the commission.

> In the absence of extraordinary circumstances or situations, before any employee is suspended, removed or discharged, he shall be given written notice of the intended suspension or termination, which notice shall state the reasons for the suspension or termination and inform the employee that he has the right to respond in writing to the reasons given for the suspension or

14

termination within a reasonable time and respond orally before the official charged with the responsibility of making the suspension or termination decision. A written decision on the response of the employee, if any, will be provided to the employee at the earliest practicable date. Such official *may, in his discretion, provide for a presuspension or pretermination hearing and examination of witnesses*, and if a hearing is to be held, the notice to the employee shall also set out the time and place of the hearing. A duplicate of the notice shall be filed with the commission. After the employee has responded or has failed to respond within a reasonable time, the official charged with the responsibility of making the suspension or termination decision shall determine the appropriate disciplinary action, and shall notify the employee of his decision in writing at the earliest practicable date.

1996 Local & Private Laws, ch. 935 § 10 (H.B. 1661) (emphasis added). As noted above, the law tracks Mississippi Code Annotated section 21-31-23 in relevant part.

¶29.    Thus, the law grants the sheriff discretion as to whether to hold a "pretermination hearing *and examination of witnesses*." *Id.* (emphasis added). The law is consistent with *Loudermill*, *supra*, which made clear that a pre-termination hearing need not be "a full evidentiary hearing" and that the employee need only be given fair notice of the charges against him and an opportunity to respond "either in person or in writing." *Loudermill*, 470 U.S. at 545-46. Therefore, to the extent that Fisher argues that he was entitled to a formal evidentiary hearing prior to his termination, we disagree. Neither due process nor the relevant civil service law requires such a hearing.

¶30.    Relying on the civil service law, the Department argues that a pre-termination hearing is only "discretionary" and that Fisher was not entitled to such a hearing as a matter of right. Indeed, in *Burleson*, *supra*, a plurality of this Court accepted this same argument and concluded that "[t]he sheriff's decision whether or not to grant a pre-termination hearing is discretionary." *Burleson*, 872 So. 2d at 48 (¶14) (plurality op.) (applying a similar civil

15

service rule). The *Burleson* plurality also concluded that due process did not require a hearing prior to the termination of a civil-service-protected deputy sheriff. *Id.* at 49 (¶¶15-17). The plurality based its conclusion on its own weighing of "the *Mathews* factors" (i.e., "the three factors normally weighed in determining the required amount of process"): "the importance of the individual interests involved, the value of specific procedural safeguards to that interest and the government interest in administrative efficiency." *Id.* at (¶¶15, 17) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

¶31. However, as Judge Southwick observed in dissent in *Burleson*, the plurality failed to apply the United States Supreme Court's holding in *Loudermill*. *Burleson*, 872 So. 2d at 52 (¶39) (Southwick, J., dissenting). Moreover, the plurality should not have conducted its own weighing of the *Mathews* factors because the United States Supreme Court had *already* weighed those factors in the precise "context of for-cause termination from public employment." *Id.* at 52-53 (¶40) (citing *Loudermill*, 470 U.S. at 543-45). In *Loudermill*, the United States Supreme Court weighed the *Mathews* factors and held that due process "requires some kind of a hearing prior to discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill*, 470 U.S. at 542-43 (quotation marks omitted).

¶32. We now agree with Judge Southwick that "more process [is] due" prior to the termination of a civil-service-protected officer. *Burleson*, 872 So. 2d at 52 (¶39). Under *Loudermill*, prior to his termination, Fisher was not entitled to an "elaborate" hearing or a "full evidentiary hearing." *Loudermill*, 470 U.S. at 545. Nor was he entitled to cross-

16

examine all potential witnesses. However, prior to his dismissal, Fisher was at least entitled to fair notice of the charges against him and an opportunity to respond "either in person or in writing." *Id.* at 546.

¶33. In this case, Fisher was not afforded the minimum, informal "some kind of a hearing" required by *Loudermill*. The written notice of termination delivered to Fisher on June 13, 2017, simply informed him that he was being terminated for "violations of Departmental Policies and Procedures that are stated in the Disciplinary Action Notice that was produced by Captain Spiers." However, the referenced "Disciplinary Action Notice," which identified the policies that Fisher had violated, was not attached to the notice of termination. Fisher requested the document, but it was not provided to him until about two months after he was dismissed. In addition, Fisher was not given a pre-termination opportunity to respond to the charges or meet with the sheriff or anyone else. The sheriff acknowledged as much during the hearing before the Commission, stating, "Somebody said that Fisher wanted to talk to me, but . . . there was nothing to talk about." Therefore, we agree with Fisher that he was denied the minimum pre-termination process required by *Loudermill*. However, the question remains what remedy, if any, is appropriate given that there is substantial evidence to support the Commission's ultimate finding that Fisher was dismissed in good faith for cause.

### IV. Fisher is not entitled to reinstatement, back pay, or—in this civil service appeal—any other damages.

¶34. Although we hold that Fisher was denied the pre-termination hearing required by *Loudermill*, we have also concluded, for the reasons explained above, that there is substantial evidence to support the Commission's ultimate finding that Fisher was dismissed in good

17

faith for cause, namely, for his violation of Policy 5.05. Moreover, nothing in the record suggests that a pre-termination hearing would have affected the outcome of the case or prevented Fisher's dismissal. Under these circumstances, we conclude that the denial of pre-termination process was harmless and that Fisher is not entitled to reinstatement or back pay. The civil service law governing the Jackson County Sheriff's Department authorizes the Commission to order reinstatement and award back pay only "if it finds that the disciplinary action was made for political or religious reasons or was not made in good faith for cause." 1996 Local & Private Laws, ch. 935 § 10 (H.B. 1661). When, as in this case, an employee has been dismissed in good faith for cause, the Commission is not authorized to order reinstatement or award back pay based solely on a pre-termination procedural error or deprivation of process. *Id.*; *see also, e.g.*, *Morehouse v. Jackson*, 614 F. App'x 159, 163-64 (5th Cir. 2015) ("When a plaintiff receives a constitutionally satisfactory post-termination hearing, and it is clear that the plaintiff's dismissal would ultimately have occurred absent procedural defects, the plaintiff is not entitled to reinstatement, or to back pay and related benefits." (citations and quotation marks omitted)).

¶35. In a supplemental brief, Fisher argues that even if we affirm the Commission's decision to deny him reinstatement and back pay, he is entitled to compensatory or nominal damages based on the Department's pre-termination violation of his right to procedural due process. We disagree for three different reasons.

¶36. First, Fisher never requested compensatory or nominal damages before the Commission, in the circuit court, or in his opening brief or reply brief in this Court. Rather,

18

Fisher consistently sought only reinstatement and back pay. The first suggestion that Fisher might recover compensatory or nominal damages came sua sponte from this Court, in an order directing the parties to file supplemental briefs.[3] Because Fisher failed to raise this issue before the Commission, before the circuit court, and in his opening brief and reply brief in this Court, the issue is waived. *See, e.g.*, *Rosenfelt v. Miss. Dev. Auth.*, 262 So. 3d 511, 519 (¶27) (Miss. 2018) ("[W]e decline to address an issue that has not been briefed on appeal. . . . Simply put, we will not act as an advocate for one party to an appeal." (quotation marks omitted)).

¶37.    Second, there is no legal basis for an award of nominal or compensatory damages in this case. As authority for an award of nominal damages, Fisher cites *Carey v. Piphus*, 435 U.S. 247, 266 (1978), which holds that in cases filed under 42 U.S.C. § 1983, a plaintiff may recover nominal damages for a violation of procedural due process. However, this is not a section 1983 lawsuit. It is simply an appeal from the Commission's denial of Fisher's request for reinstatement and back pay. Nothing in the legislation creating the Commission authorizes either the Commission, the circuit court sitting as an appellate court, or this Court to award "nominal damages" for procedural due process violations.[4]

---

[3] The order also directed the parties to address whether any claim for nominal or compensatory damages had been waived.

[4] The partial dissent cites *Howell v. Board of Supervisors Jefferson Davis County*, 70 So. 3d 1148 (Miss. Ct. App. 2011), in which a vendor (Howell) appealed a board of supervisors' decision to rescind a prior contract award. *Id.* at 1151-52 (¶¶1-8). This Court held that the board violated due process by rescinding the contract without notice or a hearing, but we could not say whether the board "would have been justified in ending the contract" following proper notice and a hearing. *Id.* at 1156-57 (¶¶30-32). Therefore, we reversed and remanded the case to the circuit court for the vendor to "present evidence of

19

¶38. Third, even if Fisher had filed a section 1983 lawsuit, the proper defendant would have been the county or perhaps the sheriff in his individual capacity—not the "Jackson County Sheriff's Department," which is the only party on the other side of the "v." in this case. *See, e.g.*, *Rose v. Hinds Cnty. Sheriff Dep't*, No. 3:19-CV-215-HTW-LRA, 2021 WL 518333, at *2 (S.D. Miss. Feb. 11, 2021); *Cooley v. Forrest Cnty. Sheriff's Dep't*, No. 2:20-CV-5-KS-MTP, 2020 WL 5118054, at *2 (S.D. Miss. Aug. 31, 2020); *see also Brown v. Thompson*, 927 So. 2d 733, 737-38 (¶¶11-14) (Miss. 2006) (holding that the county, not the sheriff's department, was the proper defendant in a suit filed under the Mississippi Tort Claims Act because "the Sheriff's Department does not enjoy a separate legal existence, apart from [the] County"). Thus, even if a section 1983/procedural due process claim could be asserted alongside a civil service appeal, the proper defendant for such a claim is not a party in this case. In the absence of some legal basis for imposing civil liability on the Sheriff's Department, we cannot order that entity to pay damages just because we think there

---

both her alleged contract damages and any actual damages resulting from the procedural due-process violation." *Id.* at 1157 (¶32).

By remanding the case to the circuit court to address the vendor's claim for contract damages, *Howell* simply followed settled precedent interpreting the specific statute that governs appeals from decisions of boards of supervisors. *See City of Durant v. Laws Constr. Co.*, 721 So. 2d 598, 606 (¶34) (Miss. 1998). That statute directs that the circuit court "shall render such judgment as the board . . . ought to have rendered." *Id.* (quoting Miss. Code Ann. § 11-51-75). The Supreme Court has interpreted this language as a directive to the circuit court to order the board to pay "contract damages" on a valid claim for breach of contract. *Id.* Perhaps that reasoning would also permit the circuit court to order the board to pay damages for a due process violation, although *Howell* cited no authority for that point. *See Howell*, 70 So. 3d at 1157 (¶32). In any event, the civil service statutes that govern this appeal contain no comparable language that would authorize the Commission or the circuit court to award nominal or compensatory damages for due process violations in cases in which an employee has been properly dismissed in good faith for cause.

20

ought to be a remedy and the Sheriff's Department happens to be the only responding party in this action. If Fisher wants to file a section 1983 claim against the county or the sheriff, he can do so, but such a claim cannot be decided by this Court in this case.

## CONCLUSION

¶39. Department Policy 5.05 is not unconstitutionally vague, and there is substantial evidence to support the Commission's findings that Fisher violated the policy and that the Department terminated his employment in good faith for cause. Fisher was denied pre-termination due process because the Department did not provide him with notice of the charges against him and at least an informal opportunity to respond prior to his dismissal. However, Fisher's termination was upheld after a full and fair post-termination hearing, and he is not entitled to reinstatement, back pay, or any other remedy in this civil service appeal.

¶40. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, SMITH AND EMFINGER, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, McDONALD AND McCARTY, JJ. LAWRENCE, J., NOT PARTICIPATING.**

**BARNES, C.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶41. I concur with the majority that while there was substantial evidence to support the Commission's finding that Fisher's termination was made in good faith and for cause, and "nothing to suggest a pre-termination hearing would have prevented Fisher's dismissal," his termination violated his right to procedural due process. I also agree that reinstatement and/or back pay are not appropriate remedies under the circumstances. Admittedly, some jurisdictions have found limited back pay from the date of discharge to the date of a proper

21

hearing to be an appropriate remedy. *See Brewer v. Chauvin*, 938 F.2d 860, 865 (8th Cir. 1991); *Enter. Fire Fighters' Ass'n v. Watson*, 869 F. Supp. 1532, 1542 (D. Ala. 1994); *Fraley v. Civil Serv. Comm'n*, 356 S.E.2d 483, 488 (W.Va. 1987). In *Hogue v. Clinton*, 791 F.2d 1318, 1328-39 (8th Cir. 1986), Chief Judge Lay reasoned in his separate opinion that barring "recovery of back pay damages by the application of the *Carey* rules would make a mockery of the requirement of a pretermination hearing since, without the deterrent of a back pay award, no incentive remains for the employer to do anything more than provide only a post-termination hearing." *Id*. (Lay, C.J., concurring in part and dissenting in part) (stating that limited back pay should be awarded if an employee proves "a property deprivation based on having been terminated without a *Loudermill*[5] pretermination hearing"). Other jurisdictions have determined that no back pay is appropriate if the plaintiff would have been terminated even had procedural due process been afforded. *See, e.g.*, *Wilson v. Taylor*, 658 F.2d 1021, 1033-35 (5th Cir. 1981); *County of Monroe, Florida v. U.S. Dep't of Labor*, 690 F. 2d 1359, 1362-63 (11th Cir. 1982); *Burt v. Abel*, 585 F.2d 613, 616 (4th Cir. 1978). Nevertheless, because section 21-31-23 only authorizes an award of back pay upon a finding that the employee's termination "was not made in good faith for cause," I find that any award of limited back pay as a remedy under these circumstances is precluded.

¶42.    However, I respectfully dissent from the majority's decision to affirm, as it gives Fisher no effective remedy for the violation of procedural due process; nor does it provide any incentive for the Department to comply with the mandates of section 21-31-23, so long

---

[5] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

as the same result would have been achieved. Therefore, I would reverse and remand to the circuit court for further findings on whether compensatory or nominal damages are appropriate.

¶43. The majority has determined that Fisher has waived any right to nominal damages. I disagree. I do not find that a party requesting reinstatement and back pay for a violation of procedural due process is barred from receiving other compensatory or nominal damages. The United States Supreme Court recognized in *Carey v. Piphus*, 435 U.S. 247, 266 (1978), that the "right to procedural due process *is* '*absolute*'"; therefore, even in the absence of actual injury, "the denial of procedural due process should be actionable for nominal damages[.]" (Emphasis added and citations omitted). The *Carey* Court also held that if no actual injury from the deprivation of due process is proven, respondents are "*entitled* to recover only nominal damages." *Id*. at 248 (emphasis added).

¶44. The United States Court of Appeals for the Fifth Circuit has further reasoned that *Carey* "makes it clear that if a plaintiff *can* prove actual damages resulting *solely* from the deprivation of procedural due process, the plaintiff is entitled to damages." *Wilson*, 658 F.2d at 1032 (emphasis added). *Accord County of Dallas v. Wiland*, 216 S.W.3d 344, 357 (Tex. 2007) (If just cause existed to dismiss the employees, they "can recover only damages directly resulting from the denial of a hearing, if any can be proved, or, absent such proof, nominal damages."); *but see Hall-Brewster v. Boston Police Dep't*, 132 N.E.3d 983, 997 (Mass. App. Ct. 2019) (finding that "[w]here a public employee's termination is justified, the employee is entitled only to nominal damages because the employee would have been

23

terminated even if the required hearing had been held").

¶45. The majority concludes there is "no legal basis for an award of nominal or compensatory damages in this case" in part because *Carey* was a 42 U.S.C. § 1983 case. *Supra* at ¶37. However, this Court has applied *Carey*'s rationale to an agency's decision where no section 1983 claim was asserted. *Howell v. Bd. of Sup'rs of Jefferson Davis Cnty.*, 70 So. 3d 1148, 1157 (¶¶31-32) (Miss. Ct. App. 2011). We held in *Howell* that in order for a plaintiff "to recover more than nominal damages for a procedural due-process violation," he "'must show that [his] injuries resulted from the denial of due process itself,' . . . not merely from the underlying decision of the [agency.]" *Id.* at 1157 (¶32) (quoting *Hill v. City of Pontotoc, Miss.*, 993 F.2d 422, 425 (5th Cir. 1993) (citing *Carey*, 435 U.S. at 263)).[6] We, therefore, remanded to the circuit court, acting as an intermediate appellate court, for a finding whether any injury resulted from the denial of due process. *Id.*[7]

¶46. In supplemental briefing, both parties concede that the governing statutory authority

---

[6] *See also White v. Barill*, 557 S.E.2d 374, 377-78 (W. Va. 2001) (citing *Carey* for authority that if the Commission finds dismissal would have occurred on remand, nominal damages are to be awarded); *Bowler v. Bd. of Trustees of Sch. Dist. No. 392, Shoshone Cty., Mullan*, 617 P.2d 841, 849 (Idaho 1980) (noting *Carey* entitles a plaintiff to recover nominal damages if he establishes "the deprivation of a protected liberty or property interest is substantively justified, but procedurally defective").

[7] The majority would distinguish *Howell* because it "followed settled precedent interpreting the specific statute that governs appeals from decisions of boards of supervisors," and because the applicable statute, Mississippi Code Annotated section 11-51-75(d) (Rev. 2012), "directs that the circuit court 'shall render such judgment as the board . . . ought to have rendered." *Supra* at n.4. That statute, like the one at issue here, provides no specific remedy for the violation of procedural due process. The majority seemingly questions *Howell*'s authority for remanding for a determination of damages. The answer is simple—*Carey*. *See Howell*, 70 So. 3d at 1157 (¶32).

24

does not address remedies such as compensatory or nominal damages. While it is true that Mississippi Code Annotated section 21-31-23 fails to provide a remedy for the denial of procedural due process, the statute presupposes that the outlined mandatory procedures are followed. Here they were not.

¶47. In accordance with our decision in *Howell*, as well as *Carey*, I find the appropriate remedy in the present case is to reverse and remand to the circuit court for a determination of whether the denial of procedural due process resulted in injury to Fisher and whether he is entitled to compensatory damages; if he is not, the court should award nominal damages.

**WESTBROOKS, McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**